## UNITED STATES v. WEZEL.

### No. 201.

District Court, S. D. Illinois, N. D.

Feb. 25, 1943.

Howard L. Doyle, U. S. Atty., of Springfield, Ill., and Michael Shore, Asst. U. S. Atty., of Peoria, Ill., for plaintiff.

John E. Dougherty and Wayne Mathis, both of Peoria, Ill., for defendant.

ADAIR, District Judge.

#### Findings of Fact.

This cause arises upon the complaint filed on August 8, 1942, and the affidavit attached thereto, filed as of the same date, and the amended affidavit, filed on December 2, 1942, and the answer of the defendant, filed as of February 10, 1943.

In said complaint it is alleged that William Henry Wezel was prior to the 28th day of January, 1935, a native and citizen of Germany, and that said defendant entered the United States on the 8th day of October, 1927, and now resides in Peoria, Illinois; that on the 12th day of September, 1934, the said defendant filed his petition for naturalization, and that said defendant, at that time, alleged under oath among other things, as follows:

"I am attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the United States. It is my intention to become a citizen of the United States, and to renounce absolutely and forever all allegiance and fidelity to any foreign prince,

potentate, state, or sovereignty, and particularly to The German Reich, of which at this time I am a citizen, and it is my intention to reside permanently in the United States."

Thereafter, on the 28th day of January, 1935, the said defendant took the following oath of allegiance in open court as required by law:

"I hereby declare, on oath, that I absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate, state or sovereignty, and particularly to The German Reich, of which I have heretofore been a citizen; that I will support and defend the Constitution and the laws of the United States of America against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same, and that I will take this obligation freely without any mental reservation for the purpose of evasion: So help me God. In acknowledgment whereof I have hereunto affixed my signature."

That on the same date to wit, the 28th day of January, A.D. 1935, in the United States District Court for the Southern District of Illinois, Northern Division, located at Peoria, Illinois, said court relying upon the good faith of the representations made by the defendant, entered its order admitting said defendant to citizenship in the United States, and the certificate of naturalization was issued. Said complaint further alleges that all the representations, as aforesaid, were false and fraudulent. All of said allegations, with the exception of the false accusations have been admitted by the defendant.

The court finds that the defendant is now a resident of the city of Peoria, Illinois, and that the court has jurisdiction to determine the material facts at issue.

The court is quite cognizant of the seriousness of the charge and the result of the determination of this issue. It is especially serious not only to the defendant and to the members of his family, but the result of this determination is quite serious to the many thousand immigrants now true Americans, who have obtained their citizenship by honest and well-meaning intentions, and who have remained true and loyal citizens of this country. It is equally serious to the entire citizenship of this land. No court should set aside or hold for naught a certificate of citizenship properly obtained unless the evidence is clear and convincing, and no court should hesitate if the evidence produced conforms to such standard. This is neither a criminal, quasi criminal or civil action, but, on the contrary, is an action in equity. The court is of the belief that the defendant is entitled to that rule of law which requires that a man shall be proved guilty beyond a reasonable doubt before he should be so found.

There is no dispute in this cause that the defendant arrived as an immigrant from Germany, coming first to Canada, and then to the United States; that he traveled from California to the city of Peoria, and there obtained employment on a farm, and was later employed as a laborer by the Caterpillar Tractor Company in East Peoria, Illinois, and has been so employed by such Company for several years last past; that he educated himself to the reasonable use of the English language, and almost completed a course at Wabash College; that he has attended school at Bradley Polytechnic Institute, Peoria, Illinois; that he was married at the time of his naturalization, and has obtained promotions from his employers from the time of his employment at the Caterpillar Tractor Company to the present time. These statements are made in fairness to the defendant, but are not controlling in the determination of the issues before this court.

In the years 1933, 1934 and 1935, shortly prior to the time, and subsequent to his receiving his naturalization certificate, defendant was a student at Wabash College, and while he was such a student he wrote different theses eulogizing the German form of government, and further stated, "He thought he could go back to Germany and get a good job because he was a Nazi and had papers showing he belonged to the Nazi party in 1922." He had heated debates with his Professors about the Nazi system of Government in which defendant Wezel constantly proclaimed the superiority of such Government; that he had constantly stated before these Professors, "That he was delighted and enthusiastic and satisfied with the progress of Hitler and Nazi Germany"; that he was emotional and fervid in his support of Hitler; that during these times he had stated, "I have worn the Brown shirt and I am proud of it." At a lecture about the year 1935 at the College, at which he was required to attend, he created quite a commotion and a considerable disturbance in the back of the lecture hall, at which time the lecturer was condemning Germany because of the German Government's intolerance and acts of

barbarism that were then and now being perpetrated.

In the year 1939, just a few weeks before the German Government started its military conquest of Europe, defendant made a trip to Germany and remained there for some two weeks. He returned to this country and engaged in his usual vocation of metallurgist at the Caterpillar Tractor Company, and within a few days after his return, entered into heated conversations with some ten or twelve fellow employees at such Company, stating to them, "Germany is a better government than the United States; Hitler is doing more for Germany than Roosevelt is doing for the United States"; and, at that time bet $5 that Hitler would never turn the German people down and skip with the people's money after the war; "that Hitler was a better leader; that he preferred Hitler's form of government to this government; that there were no tenement houses in Germany and German laborers were receiving more money than laborers in this country; that this government would be better off if we had a government like Germany; we should have a Hitler form of government in the United States; that Hitler would never be beaten because he was too smart; that living conditions in Germany are better than in the United States."

Testimony further shows, that previous to Germany's entry into Poland and war with England, defendant had shaken his head affirmatively upon being asked if he had received a letter from the German Consul requesting him to report to the Consulate in order that arrangements could be made for him to· serve in the German Army; that defendant had received German publications until Germany was blockaded; that he had constantly praised the German Army in Poland and in France.

Testimony further shows, at the time of Pearl Harbor, defendant stated, "There was no one smart enough in Europe or in the United States to beat Hitler." In May, 1942, defendant stated in reply to a statement that the Russians were beating Germany, "Wait until the Spring." Shortly after his return from Germany, the defendant constantly vilified the President of the United States by referring to him in a profane and obscene manner. The defendant justifies these statements that it was due purely to politics, but this court must consider that at the time these statements were made, the President of the United States had promoted the Lend-Lease Program and many other pro-Allied laws, and was condemning the atrocities and barbarism of the German government, and that such condemnation had more to do with vilification than with any political leanings the defendant may have had.

Shortly before the petition in this case was filed, the defendant was interviewed by a special agent for the Federal Bureau of Investigation. The defendant, at that time, did not know that said person was a special agent and the defendant then stated to such agent that he was in favor of the German form of government; that he had been a member of the Nazi party; that he was present at the Munich Putsch; that he was anti-British; that he had a brother in the German Army, and a brother who was a member of the Gestapo. Upon being asked by the special agent if he would serve in the German Army if threats of reprisals to his relatives in Germany were made, defendant replied: "He did not know."

To all of these statements the defendant has entered a denial, and upon the witness stand denied the same with one single exception. The defendant admitted, however, that the witnesses, some twenty of them who testified against him, had been friendly, and so far as he knew there was no reason why they should testify falsely.

This court is now confronted with the determination of whether or not William Henry Wezel was guilty of fraud on the 28th day of January, 1935, when he subscribed to his oath of allegiance, and stated: "I absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, and particularly to the German Reich, of which at this time I am a citizen. * * *" Under the decisions of the courts, statements made many years after the oath of allegiance was taken may be considered to determine whether or not the applicant was guilty of fraud at the time the oath was administered even though no evidence is introduced of his intentions at time oath was administered. It has been determined that when such statements are made under trying times, and when the mother government and adopted government are in conflict, that such statements may be considered alone and of themselves in determining the state of mind that exists at the time the defendant entered into such oath. In fact, many courts have held

that statements made many years after a man has been a citizen of the country and enjoyed the benefits of it only display that the attitude of mind was even more antagonistic to the adopted country upon the date of the administration of the oath that existed at the time the statements were made.

It is the opinion of this court, that all statements made after naturalization derogatory to the best interests of this country, and in favor of the German Reich might of themselves be sufficient to determine the fraudulent acts of the defendant at the time he made application for citizenship, and at the time the oath was administered. This case, however, presents a much stronger proof of fraud because unquestionably this defendant did immediately prior and at the time and immediately subsequent to his application for granting of citizenship, enter into many heated arguments in favor of the Nazi form of government, and objected to the form of government of this country when common knowledge teaches that every thought of the German government is repugnant to every belief of liberty that we have cherished in this country. It seems inconceivable that a man of his attitude could take the oath of allegiance without the commission of fraud although no other evidence was introduced, but since that time when all persons knew they were to be confronted with the German Reich and after war had been declared, and after defendant's return from Germany, we find the defendant boasting of his love for the form of government he had sworn to abjure, and condemning the form of government that he had sworn to uphold. It is true that after the application was filed to set aside his citizenship, we find the defendant, under the direction of his superior officers of the Caterpillar Tractor Company, assisting in the sale of bonds and trying to carry on his employment without any further derogatory remarks against the government.

Naturally when a man is accused, as this defendant has been accused, of making a false affidavit, he would subsequently cease any utterances and would make the statements to a neighbor as he made in this case, "That he loved America, and the obtaining of his citizenship was the happiest time of his life." These statements were made long after the petition in this case had been filed. In addition thereto, defendant introduced many respectable officials of the Caterpillar Tractor Company who testified that William Henry Wezel had been a good workman during the time he had been employed by them; that he had carried on his work with the same loyalty as other employees of said company, and they had never heard him make a derogatory remark against this government. It is quite natural that the defendant was more interested in converting his fellow employees of this war industry, and did, of course hesitate to make statements to his superiors that might cast a reflection on his loyalty and affect his employment in necessary war work. Many of these officials testified that they were acquainted with many of the witnesses who appeared against the defendant, and they stated that they were of good character and worthy of belief.

### Conclusions of Law.

The court must, therefore, conclude that the evidence in this case convinces the court beyond a reasonable doubt that the order admitting William Henry Wezel to citizenship, and the certificate of naturalization granted him was obtained by fraud and was procured by an oath falsely made; that William Henry Wezel at the time the certificate was granted him and oath was administered had not renounced all allegiance and fidelity to the German Reich, and did not intend that he would support the Constitution and laws of the United States.

### Decree.

The court being fully advised in the premises, it is hereby ordered, adjudged and decreed that the order of Court, dated January 28, 1935, admitting William Henry Wezel to citizenship in the United States, be, and it is hereby cancelled and set aside;

That William Henry Wezel be, and he is hereby directed to surrender his certificate of naturalization to the Clerk of this Court;

That the costs be, and are hereby assessed against the defendant.