## KLAPPROTT *v.* UNITED STATES.

No. 42.   Argued October 20, 1948.—Decided January 17, 1949.

*P. Bateman Ennis* argued the cause for petitioner. With him on the brief were *W. Clifton Stone* and *Morton Singer.*

*Robert L. Stern* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Robert S. Erdahl* and *Beatrice Rosenberg.*

MR. JUSTICE BLACK announced the judgment of the Court and delivered the following opinion in which MR. JUSTICE DOUGLAS joins.

This case raises questions concerning the power of federal district courts to enter default judgments depriving naturalized persons of their citizenship without hearings or evidence, and to set aside default judgments under some circumstances four years or more after the default judgments were entered.

The petitioner was born in Germany. In 1933 after a hearing a New Jersey state court entered a judgment admitting him to United States citizenship. Petitioner then took an oath renouncing allegiance to Germany and promising to bear true faith and allegiance to the United States, whereupon the court granted him a certificate of naturalization. See 8 U. S. C. § 735.

Nine years later the United States Attorney, acting pursuant to 8 U. S. C. § 738, filed a complaint in the United States District Court of New Jersey to set aside the state court's judgment and cancel petitioner's certificate of naturalization. The complaint alleged generally that petitioner's oath of allegiance, etc., was false, that at the time of taking it petitioner well knew that he was not attached to the principles of the United States Constitution, and that he had not in fact intended thereafter to bear true allegiance to the United States or renounce and discontinue his allegiance and fidelity to Ger-

many. In particular the complaint charged no more than that petitioner subsequent to 1935 had evidenced his loyalty to Germany and his disloyalty to this country by writings and speeches; that he was in 1942 and had been before that time a leader and member of the German American Bund and other organizations, the principles of which were alleged to be inimical to the Constitution of the United States and the happiness of its people; that these organizations were propagated and encouraged by enemies of the United States who believed in the ideology enunciated by Adolph Hitler. For the requirement that allegations of fraud be particularized, see Rule 9 (b) of the Rules of Civil Procedure.

Petitioner, though served with notice May 15, 1942, failed to answer the complaint within sixty days as required by 8 U. S. C. § 738 (b). But on July 7, 1942, before expiration of the sixty days, petitioner was arrested and confined in a New York jail on criminal charges brought by the United States. On July 17, 1942, the Federal District Court of New Jersey on motion of the United States Attorney, entered a judgment by default against petitioner in the denaturalization proceedings, set aside the 1933 state court judgment admitting him to citizenship, and cancelled his certificate of naturalization.

More than four years after the default judgment was rendered against him, and while petitioner was still a government prisoner, he filed in the District Court a verified petition praying that the court set aside the judgment. The United States did not deny any of the facts alleged in the verified petition. The District Court, necessarily accepting the undenied allegations as true, held that the petitioner had been guilty of "willful and inexcusable neglect" and accordingly dismissed the petition "because of the defendant's laches." 6 F. R. D. 450. The United States Court of Appeals, rejecting petitioner's several contentions, affirmed, one judge dissenting. 166 F. 2d 273.

In considering the case we also must accept as true the undenied allegations of the petitioner. These facts are of great importance in considering some of the legal contentions raised. The alleged facts chronologically arranged are as follows:

*1933*
Nov. 16.     Petitioner was naturalized by order of court.

*1936*
Nov. 17.     Petitioner married an American citizen and now has one child by that marriage.

*1942*
Spring.      Petitioner was seriously ill. The illness left him financially poor and so weakened that he was unable to work.

May 12.      United States Attorney filed the complaint in the United States District Court of New Jersey to cancel petitioner's citizenship.

May 15.      Complaint served on petitioner. He had no money to hire a lawyer. He drew a draft of an answer to the complaint and wrote a letter to the American Civil Liberties Union asking that they represent him without fee.

July 7.      Arrested under federal indictment charging petitioner and others with conspiracy to violate the Selective Service Act. Taken before United States Commissioner at Newark, New Jersey; later carried to New York by Federal Bureau of Investigation agents, there put in prison, unable to make bond of $25,000 under which he

was held.   His letter to Civil Liberties Union taken from him by agents of the FBI eight days before expiration of time to answer cancellation of citizenship charge in New Jersey.   The agents retained the letter, never mailing it.

*1942*
July 17.

Judgment by default entered by New Jersey court in citizenship cancellation case. At the time, petitioner was in a New York jail awaiting trial under the selective service conspiracy case.   No evidence was offered by the Government to prove its charges in the complaint for cancellation of citizenship.   The Government's case consisted of no more than a verification of this complaint by an FBI agent on information and belief, based on the agent's having read FBI files concerning petitioner.

July 7, 1942, date of arrest, to June 1943.

While petitioner was still in jail, a lawyer was appointed by the New York District Court to defend petitioner in the selective service criminal case.   At his request the New York lawyer promised to help him also in the New Jersey cancellation proceedings, but the lawyer neglected to do so.   Petitioner was convicted and sentenced to penitentiary.

*1943*
June.

Petitioner elected to begin service of the New York sentence pending appeal, was carried to and confined in federal institution in Michigan where he remained until January 30, 1944.

*1944*

Jan. 30.    Petitioner transferred from federal prison in Michigan to jail in the District of Columbia to be tried with twenty-nine other persons on a charge of sedition.

*1945*

June 11.    This Court reversed petitioner's New York conviction, *Keegan* v. *United States,* 325 U. S. 478, but he continued to be held in the District of Columbia jail until November 22, 1946.

*1946*

Nov. 22.    District of Columbia sedition case dismissed. *United States* v. *McWilliams et al.,* 82 U. S. App. D. C. 259, 163 F. 2d 695. The case had previously been tried for eight months, but before completion a mistrial was declared because of the death of the presiding judge. Shortly after dismissal of the sedition case petitioner, still a prisoner of the United States, was carried to Ellis Island for deportation on account of the cancellation of his citizenship under the New Jersey default judgment.

Dec. 9.    This Court denied certiorari in three court actions unsuccessfully prosecuted by the Citizens Protective League on behalf of 159 individuals including petitioner. (The League was a non-profit organization "to insure equal rights for all and to safeguard the constitutional rights of all persons." *Citizens Protective League* v. *Clark,* 81 U. S. App. D. C. 116, 117, 155 F. 2d 290, 291; *cert. denied,* 329 U. S. 787. The complaint prayed that the At-

torney General be enjoined from deport-
ing the 159 individuals.  Petitioner had
been ordered deported March 27, 1946,
while he was in the District of Columbia
jail charged with sedition.)

*1946*

Dec. 12.       Three days after this Court's denial of cer-
tiorari, in the action brought by the
Citizens Protective League, petitioner,
still a government prisoner at Ellis Island,
stated the substance of the foregoing facts
under oath and a petition was filed on his
behalf in the New Jersey District Court
to vacate the default judgment and grant
him a trial on the merits.  Petitioner's
verified motion also alleged that the Gov-
ernment's charges against him in the New
Jersey court were untrue and he strongly
asserted his loyalty to the United States.

*1947*

Feb. 7.        District judge dismissed the petitioner's mo-
tion holding that petitioner had been
·   guilty of laches in not arranging while
in prison for defense of the cancellation
of citizenship charge.

Thus, this petitioner has now been held continuously
in prison by the Government for six and one-half years.
During that period he served one and one-half years of
a penitentiary punishment under a conviction which this
Court held was improper.   He was also held in the Dis-
trict of Columbia jail two years and ten months under
an indictment that was later dismissed.   It is clear there-
fore, that for four and one-half years this petitioner was
held in prison on charges that the Government was unable
to sustain.   No other conclusion can be drawn except that

this long imprisonment was wrongful. Whether the judgment by default should be set aside must therefore be decided on the undenied allegations that the Government, largely through the action of FBI agents, wrongfully held petitioner in New York, Michigan, and District of Columbia prisons, while the same Government, largely acting through the same or other FBI agents, caused a district court to revoke petitioner's citizenship on the ground that petitioner had failed to make appearance and defend in the New Jersey courts, although petitioner was at the time without funds to hire a lawyer.

*First.* Amended Rule 60 (b) of the Federal Rules of Civil Procedure became effective March 19, 1948.[1]  That

---

[1] Amended Rule 60 (b) provides:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59 (b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Section 57 of the Judicial Code, U. S. C., Title 28, § 118, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

was after the District Court denied the motion to set aside this default judgment and after affirmance of the District Court's action by the Court of Appeals. For these reasons the Government contends that amended Rule 60 (b) should not be applied here. In some respects, the amended rule grants courts a broader power to set aside judgments than did the old rule. Petitioner should be afforded the benefit of the more liberal amended 60 (b). For Rule 86 (b) made amended 60 (b) applicable to "further proceedings in actions then pending" unless it "would work injustice" so to apply the rule. It seems inconceivable that one could think it would work any injustice to the Government to measure the petitioner's rights by this amended rule in this case where all he asks is a chance to try the denaturalization proceeding on its merits. Amended Rule 60 (b) should be applied.

*Second.* Amended Rule 60 (b) authorizes a court to set aside "a void judgment" without regard to the limitation of a year applicable to motions to set aside on some other grounds. It is contended that this judgment is void because rendered by a District Court without hearing any evidence. The judgment is void if the hearing of evidence is a legal prerequisite to rendition of a valid default judgment in denaturalization proceedings. While 8 U. S. C. § 738, under which this denaturalization complaint was filed, plainly authorizes courts to revoke the citizenship of naturalized citizens after notice and hearing, it contains no explicit authorization for rendition of default judgments. Congressional intention to authorize court action in the absence of a citizen might be implied, however, from the provision for notice by publication in § 738 (b). Aside from possible constitutional questions, it may therefore be assumed that the section authorizes rendition of a denaturalization judgment in a defendant's absence. But it does not necessarily fol-

low that a court may also render judgment without proof of the charges made in a denaturalization complaint. And there is strong indication in § 738 and companion sections that Congress did not intend to authorize courts automatically to deprive people of their citizenship for failure to appear.

8 U. S. C. § 746 makes it a felony for applicants for naturalization or others to violate federal laws relating to naturalization. Had petitioner been found guilty of making the false oath here charged, he could have been convicted of and punished for a felony under this section. But he could have been convicted only after indictment and a jury trial at which he would have been present and represented by counsel. A conviction would have required a proof of guilt beyond a reasonable doubt, on testimony of witnesses given in the presence of the accused who would have had an opportunity to cross-examine the witnesses against him. In the event of such a conviction under required procedural safeguards, § 738 (e) authorizes courts to revoke citizenship and cancel naturalization certificates. There is a broad gap between a § 738 denaturalization thus accomplished and the one ordered by the court in this proceeding. For here, the defendant was absent, no counsel or other representative of his was present, no evidence was offered, and the only basis for action was a complaint containing allegations, questionable from a procedural and substantive standpoint, verified by an FBI agent on information acquired by him from looking at hearsay statements in an FBI dossier. The protection Congress afforded in § 738 (e) emphasizes the unfairness that would result from permitting denaturalizations in other § 738 proceedings without any evidence at all.

When we look to federal statutes other than § 738 we find no command and no express authority for courts to

enter denaturalization judgments by default without proof of facts to support the judgment. No such authority or command is contained in Rule 55 of the Federal Rules of Civil Procedure which rule relates to default judgments. Rule 55 (e) expressly bars all judgments against the United States without proof, but it cannot be inferred from this that proof is never required as a prerequisite to default judgments against all defendants other than the United States. For Rule 55 (b) (2) expressly provides for representation of defaulting parties in some instances. Rule 55 (b) (2) also directs that in certain specified instances courts, before entering judgments after default of appearance, shall make investigations, conduct hearings, and even grant jury trials. In addition to these particularized instances, Rule 55 (b) (2) also provides for court hearings before default judgment where "it is necessary . . . to establish the truth of any averment by evidence or to make an investigation of any other matter."

Thus it appears that statutes and rules have largely left for judicial determination the type of cases in which hearings and proof should precede default judgments. In this situation it is the final responsibility of this Court to formulate the controlling rules for hearings and proof. See *McNabb* v. *United States,* 318 U. S. 332, 341. For the following reasons it seems peculiarly appropriate that a person's citizenship should be revoked only after evidence has established that the person has been guilty of prohibited conduct justifying revocation.

Denaturalization consequences may be more grave than consequences that flow from conviction for crimes. Persons charged with crime in United States courts cannot be convicted on default judgments unsupported by proof. Even decrees of divorce or default judgments for money damages where there is any uncertainty as to the amount

must ordinarily be supported by actual proof. The reasons for requirement of proof in cases involving money apply with much greater force to cases which involve forfeiture of citizenship and subsequent deportation. This Court has long recognized the plain fact that to deprive a person of his American citizenship is an extraordinarily severe penalty. The consequences of such a deprivation may even rest heavily upon his children. 8 U. S. C. § 719. As a result of the denaturalization here, petitioner has been ordered deported. "To deport one who so claims to be a citizen, obviously deprives him of liberty .... It may result also in loss of both property and life; or of all that makes life worth living." *Ng Fung Ho* v. *White,* 259 U. S. 276, 284. Because denaturalization proceedings have not fallen within the technical classification of crimes is hardly a satisfactory reason for allowing denaturalization without proof while requiring proof to support a mere money fine or a short imprisonment.

Furthermore, because of the grave consequences incident to denaturalization proceedings we have held that a burden rests on the Government to prove its charges in such cases by clear, unequivocal and convincing evidence which does not leave the issue in doubt. *Schneiderman* v. *United States,* 320 U. S. 118, 158. This burden is substantially identical with that required in criminal cases—proof beyond a reasonable doubt. The same factors that caused us to require proof of this nature as a prerequisite to denaturalization judgments in hearings with the defendant present, apply at least with equal force to proceedings in which a citizen is stripped of his citizenship rights in his absence. Assuming that no additional procedural safeguards are required, it is our opinion that courts should not in § 738 proceedings deprive a person of his citizenship until the Government first offers proof of its charges sufficient to satisfy the

burden imposed on it, even in cases where the defendant has made default in appearance.

*Third.* But even if this judgment of denaturalization is not treated as void, there remain other compelling reasons under amended 60 (b) for relieving the petitioner of its effect. Amended 60 (b) provides for setting aside a judgment for any one of five specified reasons or for "any other reason justifying relief from the operation of the judgment." The first of the five specified reasons is "mistake, inadvertence, surprise, or excusable neglect." To take advantage of this reason the Rule requires a litigant to ask relief "not more than one year after the judgment, order, or proceeding was entered or taken." It is contended that the one-year limitation bars petitioner on the premise that the petition to set aside the judgment showed, at most, nothing but "excusable neglect." And of course, the one-year limitation would control if no more than "neglect" was disclosed by the petition. In that event the petitioner could not avail himself of the broad "any other reason" clause of 60 (b). But petitioner's allegations set up an extraordinary situation which cannot fairly or logically be classified as mere "neglect" on his part. The undenied facts set out in the petition reveal far more than a failure to defend the denaturalization charges due to inadvertence, indifference, or careless disregard of consequences. For before, at the time, and after the default judgment was entered, petitioner was held in jail in New York, Michigan, and the District of Columbia by the United States, his adversary in the denaturalization proceedings. Without funds to hire a lawyer, petitioner was defended by appointed counsel in the criminal cases. Thus petitioner's prayer to set aside the default judgment did not rest on mere allegations of "excusable neglect." The foregoing allegations and others in the petition tend to support petitioner's argument that he was deprived of any reasonable opportunity to

make a defense to the criminal charges instigated by officers of the very United States agency which supplied the secondhand information upon which his citizenship was taken away from him in his absence. The basis of his petition was not that he had neglected to act in his own defense, but that in jail as he was, weakened from illness, without a lawyer in the denaturalization proceedings or funds to hire one, disturbed and fully occupied in efforts to protect himself against the gravest criminal charges, he was no more able to defend himself in the New Jersey court than he would have been had he never received notice of the charges. Under such circumstances petitioner's prayer for setting aside the default judgment should not be considered only under the excusable neglect, but also under the "other reason" clause of 60 (b), to which the one-year limitation provision does not apply.

*Fourth.* Thus we come to the question whether petitioner's undenied allegations show facts "justifying relief from the operation of the judgment." It is contended that the "other reason" clause should be interpreted so as to deny relief except under circumstances sufficient to have authorized relief under the common law writs of *coram nobis* and *audita querela,* and that the facts shown here would not have justified relief under these common law proceedings. One thing wrong with this contention is that few courts ever have agreed as to what circumstances would justify relief under these old remedies. To accept this contention would therefore introduce needless confusion in the administration of 60 (b) and would also circumscribe it within needless and uncertain boundaries. Furthermore 60 (b) strongly indicates on its face that courts no longer are to be hemmed in by the uncertain boundaries of these and other common law remedial tools. In simple English, the language of the "other reason" clause, for all reasons except the five particularly

specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.

*Fifth.* The undenied allegations already set out show that a citizen was stripped of his citizenship by his Government, without evidence, a hearing, or the benefit of counsel, at a time when his Government was then holding the citizen in jail with no reasonable opportunity for him effectively to defend his right to citizenship. Furthermore, the complaint in the denaturalization proceeding strongly indicates that the Government here is proceeding on inadequate facts, just as it did in the criminal cases it brought against petitioner. For if the Government had been able on a trial to prove no more than the particular facts it alleged in its denaturalization complaint, it is doubtful if its proof could have been held sufficient to revoke petitioner's citizenship under our holdings in *Baumgartner* v. *United States,* 322 U. S. 665, *Schneiderman* v. *United States,* 320 U. S. 118, *Knauer* v. *United States,* 328 U. S. 654, 659, and see Rule 9 (b) of the Rules of Civil Procedure. And all petitioner has asked is that the default judgment be set aside so that for the first time he may defend on the merits. Certainly the undenied facts alleged justify setting aside the default judgment for that purpose. Petitioner is entitled to a fair trial. He has not had it. The Government makes no claim that he has. Fair hearings are in accord with elemental concepts of justice, and the language of the "other reason" clause of 60 (b) is broad enough to authorize the Court to set aside the default judgment and grant petitioner a fair hearing.

Mr. Justice Black, Mr. Justice Douglas, Mr. Justice Murphy, Mr. Justice Rutledge and Mr. Justice Burton agree that the District Court erred in dismissing the petition to set aside the default judgment, and that

the Court of Appeals erred in affirming the District Court judgment. The judgments accordingly are reversed and the cause is remanded to the District Court with instructions to set aside the judgment by default and grant the petitioner a hearing on the merits of the issues raised by the denaturalization complaint.*

*It is so ordered.*

MR. JUSTICE BURTON, while agreeing with MR. JUSTICE REED that a judgment of denaturalization may be entered by default without a further showing than was made in this case, believes that, under the special circumstances here shown on behalf of this petitioner, the judgment by default should be set aside and the petitioner should be granted a hearing on the merits of the issues raised by the denaturalization complaint. He therefore joins in the judgment of the Court as limited to the special facts of this case and without expressing an opinion upon any issues not now before this Court.

MR. JUSTICE RUTLEDGE, with whom MR. JUSTICE MURPHY agrees, concurring in the result.

To treat a denaturalization proceeding, whether procedurally or otherwise, as if it were nothing more than a suit for damages for breach of contract or one to recover overtime pay ignores, in my view, every consideration of justice and of reality concerning the substance of the suit and what is at stake.

To take away a man's citizenship deprives him of a right no less precious than life or liberty, indeed of one which today comprehends those rights and almost all others.[1]  To lay upon the citizen the punishment of exile

---

*[This judgment modified, 336 U. S. 942.]

[1] Cf. *Ng Fung Ho* v. *White*, 259 U. S. 276, 284; *Schneiderman* v. *United States*, 320 U. S. 118, 122, and concurring opinion 165; *Knauer* v. *United States*, 328 U. S. 654, dissenting opinion 675.

for committing murder, or even treason, is a penalty thus far unknown to our law and at most but doubtfully within Congress' power. U. S. Const., Amend. VIII. Yet by the device or label of a civil suit, carried forward with none of the safeguards of criminal procedure provided by the Bill of Rights, this most comprehensive and basic right of all, so it has been held, can be taken away and in its wake may follow the most cruel penalty of banishment.

No such procedures could strip a natural-born citizen of his birthright or lay him open to such a penalty. I have stated heretofore the reasons why I think the Constitution does not countenance either that deprivation or the ensuing liability to such a punishment for naturalized citizens. *Schneiderman* v. *United States,* 320 U. S. 118, concurring opinion 165; *Knauer* v. *United States,* 328 U. S. 654, dissenting opinion 675.

Those views of the substantive rights of naturalized citizens have not prevailed here. But the *Schneiderman* decision and *Baumgartner* v. *United States,* 322 U. S. 665, required a burden of proof for denaturalization which in effect approximates the burden demanded for conviction in criminal cases, namely, proof beyond a reasonable doubt of the charges alleged as cause for denaturalization.[2] This was in itself and to that extent recognition that ordinary civil procedures, such as apply in suits upon contracts and to enforce other purely civil liabilities, do not suffice for denaturalization and all its consequences.

---

[2] See *Schneiderman* v. *United States,* 320 U. S. 118, 125, 136, 153, 154, 158, 159. At page 158 we said: "We conclude that the Government has not carried its burden of proving by 'clear, unequivocal, and convincing' evidence which does not leave 'the issue in doubt,' that petitioner obtained his citizenship illegally." The concurring opinion in *Knauer* v. *United States,* 328 U. S. 654, 674, went upon the basis of satisfaction "beyond all reasonable doubt" concerning the proof of the grounds asserted for denaturalization.

618

More than this it was not necessary to decide in the cases cited.   No less should be required, in view of the substantial kinship of the proceedings with criminal causes, whatever their technical form or label.   Cf. *Knauer* v. *United States,* 328 U. S. 654, dissenting opinion 675, 678.

This case, however, presents squarely the issue whether, beyond any question of burden or weight of proof, the ordinary civil procedures can suffice to take away the naturalized citizen's status and lay him open to permanent exile with all the fateful consequences following for himself and his family, often as in this case native-born Americans.   The question in its narrower aspect is indeed whether those consequences can be inflicted without any proof whatever.

Under our system petitioner could not be convicted or fined for mail fraud, overceiling sales, or unlawfully possessing gasoline ration coupons upon a judgment taken by default, much less under the circumstances this record discloses to have been responsible for the default.   Yet his basic right to all the protections afforded him as a citizen by the Constitution can be stripped from him, so it is now urged, without an iota of proof, without his appearance or presence in court, without counsel employed or assigned to defend that right, and indeed with no real opportunity on his part to prepare and make such a defense.   The case thus goes far beyond the Court's ruling in *Knauer* v. *United States, supra.*   And, in my opinion, it brings to clearer focus whether, beyond the matter of satisfying the burden of proof required by the *Schneiderman* and *Baumgartner* cases, the *Knauer* case rightly permitted denaturalization through the civil procedures there pursued.[3]

---

[3] In the view of those dissenting, as well as that of the majority in the *Knauer* case, the Government had satisfied fully the burden of proof required by the *Schneiderman* and *Baumgartner* decisions. See 328 U. S. 654, 675.

If, in deference to the Court's rulings, we are to continue to have two classes of citizens in this country, one secure in their status and the other subject at every moment to its loss by proceedings not applicable to the other class, cf. *Schneiderman* v. *United States, supra,* concurring opinion at 167; *Knauer* v. *United States, supra,* dissenting opinion at 678, I cannot assent to the idea that the ordinary rules of procedure in civil causes afford any standard sufficient to safeguard the status given to naturalized citizens. If citizenship is to be defeasible for naturalized citizens, other than by voluntary renunciation or other causes applicable to native-born citizens,[4] the defeasance it seems to me should be surrounded by no lesser protections than those securing all citizens against conviction for crime. Regardless of the name given it, the denaturalization proceeding when it is successful has all the consequences and effects of a penal or criminal conviction, except that the ensuing liability to deportation is a greater penalty than is generally inflicted for crime.

Regarding the proceeding in this light, I do not assent in principle that the judgment of denaturalization can be taken by default or that the rules of civil procedure applicable in ordinary civil causes apply to permit such a result.

The grounds which I have stated for these conclusions logically would lead to casting my vote to reverse the judgment with instructions to dismiss the proceedings. Since, however, that disposition does not receive the concurrence of a majority, I join with those who, on other grounds, think that the judgment should be reversed and remanded for a new trial, in voting so to dispose of the cause. Accordingly I concur in the Court's judgment. I may add that, upon the assumption that rules of civil

---

[4] See *Knauer* v. *United States,* 328 U. S. 654, dissenting opinion 675, 676.

procedure may apply in denaturalization proceedings, I am substantially in accord with the views expressed by MR. JUSTICE BLACK.

MR. JUSTICE REED, with whom THE CHIEF JUSTICE and MR. JUSTICE JACKSON join, dissenting.

In May, 1942, the United States began proceedings in the United States District Court for the District of New Jersey, against Klapprott under § 338 of the Nationality Act of 1940, 54 Stat. 1137, 1158, 8 U. S. C. § 738,[1] to cancel his certificate of naturalization, issued in 1933, on the ground that he had taken a false oath of allegiance to procure the certificate. The complaint alleged that at the time he took the oath petitioner knew that he was not attached to the principles of the Constitution of the United States and did not intend to renounce his allegiance to the German Reich; that petitioner "is and has been notoriously and openly one of the chief leaders and active members of the German-American Bund" and other organizations sympathetic to the German Reich;

---

[1] "(a) It shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court specified in subsection (a) of section 701 of this title in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground of fraud or on the ground that such order and certificate of naturalization were illegally procured.

"(b) The party to whom was granted the naturalization alleged to have been fraudulently or illegally procured shall, in any such proceedings under subsection (a) of this section, have sixty days' personal notice in which to make answer to the petition of the United States; and if such naturalized person be absent from the United States or from the judicial district in which such person last had his residence, such notice shall be given by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the State or the place where such suit is brought."

and that he had made "numerous statements indicating his allegiance and loyalty to the German Reich and his disregard and disrespect for the principles and institutions of the United States of America."

Petitioner was personally served with summons on May 15, 1942. Without the introduction of any evidence, judgment by default was entered against him on July 17, 1942, when he failed to answer within the sixty days allowed by § 338, *supra,* note 1.

In January, 1947, four and one-half years later, Klapprott petitioned the same district court which had entered the judgment of denaturalization for an order to show cause why that judgment should not be vacated. In an affidavit appended to his petition, he stated, after admitting receipt of the summons and complaint, that it was impossible for him to enter a defense and intimated that he was unable to take steps to have the judgment vacated prior to 1947. There is no allegation that he was ignorant of the entry of the judgment for any period of time. See Rules 5 (a) and 77 (d) of the Federal Rules of Civil Procedure. The reasons contained in the affidavit in support of this general statement can be summarized as follows: Petitioner, as a result of serious illness, was in poor health and "unable to get around very well" at the time summons was served. Since he had no money with which to retain a lawyer, he drafted a letter to the American Civil Liberties Union of New York requesting legal assistance. On July 7, 1942, seven days before time for filing appearance expired, he was arrested by federal authorities on an indictment in the United States District Court for the Southern District of New York, charging him with a conspiracy to violate the Selective Service Act. The letter was taken by these authorities, and, so far as Klapprott knew, never mailed. The court appointed a lawyer to defend petitioner in the New York conspiracy case. Petitioner informed him of the denatu-

ralization proceeding, to which the lawyer promised to attend, but which he neglected, allowing judgment to be entered by default. Because of the lengthy trial and exceedingly high bail in connection with the conspiracy charge, petitioner was still unable to take steps to have the judgment vacated. He was found guilty of the conspiracy [2] and committed to the Federal Correctional Institution at Milan, Michigan. On January 30, 1944, pursuant to another indictment—the "Sedition Case" [3] in the United States District Court for the District of Columbia—he was transferred to the District of Columbia. He remained in custody throughout the trial of this case until November 21, 1946, when the indictment was dismissed. Petitioner was then released but was immediately remanded to custody at Ellis Island for the purpose of deportation. From there he began this attempt to have the judgment of denaturalization vacated.

Petitioner in his affidavit denied the allegations in the government's original complaint and asserted that he had a good and legal defense to the action for cancellation of his certificate of naturalization.

If petitioner is entitled to relief from the default judgment, he must qualify under one or more of the provisions of Rule 60 (b) of the Federal Rules of Civil Procedure.[4] I do not think that his petition or the affidavit

---

[2] Conviction subsequently reversed in *Keegan* v. *United States,* 325 U. S. 478.

[3] *United States* v. *McWilliams,* 82 U. S. App. D. C. 259, 163 F. 2d 695.

[4] Rule 60 (b):

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59 (b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct

in support thereof meets the requirements of that Rule for vacating a judgment.

*First.* The Court assumes, as I think it must, that § 338 of the Nationality Act authorizes default judgments of denaturalization. So much is clear from the provisions in (b) of that section for notice by publication and in (c) for the denaturalization of one who has left the United States to establish a permanent residence elsewhere. The action authorized by the section is civil.[5] The general rule in civil actions is that notice places on the party to whom it is directed the responsibility to appear and defend or face the consequences. Rule 55 of the Federal Rules of Civil Procedure provides for default judgments

---

of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Section 57 of the Judicial Code, U. S. C., Title 28, § 118, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

[5] A subsequent section, 54 Stat. 1163, 8 U. S. C. § 746 (a) (1) and (d), specifically providing for the criminal penalties of fine and imprisonment for the utterance of a false oath such as this, indicates an intention that proceedings under § 338 are not criminal. Cf. *Knauer* v. *United States,* 328 U. S. 654, 671; *Luria* v. *United States,* 231 U. S. 9, 27–28; *Sourino* v. *United States,* 86 F. 2d 309; *United States* v. *Wezel,* 49 F. Supp. 16, 17.

in civil actions where the party against whom relief is sought fails to plead. The instances enumerated in (b) (2) and (e) of that rule, as those where a default judgment shall not be entered, do not include this case.

The Court suggests under caption *Second,* however, that the presentation of evidence is a prerequisite to the entry of such a judgment, and that a default judgment entered without evidence is void and therefore subject to vacation without a definite time limit under (4) of Rule 60 (b). It points out that *Schneiderman* v. *United States,* 320 U. S. 118, held that "clear and convincing" evidence is necessary to support a judgment of denaturalization. The holding in that case, however, must be viewed in its setting, *i. e.,* a contested case. The case does not support the proposition that any evidence, clear and convincing or otherwise, is required in an uncontested denaturalization proceeding. The general rule in civil actions is that none is necessary. Even though deportation is a most serious disaster to the deportee, it is founded here on uncontested allegations of adequate facts that must be taken as true. Although the committee which formulated the Federal Rules of Civil Procedure twice made a hearing on evidence a requirement for the entry of a default judgment, Rule 55 (b) (2) and (e), no such requirement was expressed for cases of this sort. Except for cases of the sort specified in (b) (2) and (e), and those where the amount of damages is in question, I think the meaning of the Rule is that a default is the equivalent of an admission of allegations which are well pleaded.

The Court seeks support in the fact that other sections of the Nationality Act, 8 U. S. C. §§ 738 (e) and 746, provide for denaturalization when the alien has been convicted of the crime of procuring his certificate of naturalization by knowingly false statements under oath. The protections which safeguard the alien in such a

criminal prosecution are sought to be extended to him in civil proceedings under § 738. To me the very existence in the Act of two parallel methods of denaturalization indicate that the protections inherent in the criminal proceeding are not intended to apply to the civil proceeding such as we have here.

Since no expression of Congress can be found, either in the Federal Rules or in the Nationality Act, to the effect that evidence is necessary to validate a civil default judgment of denaturalization, I do not think it is the function of this Court to supply one.

The suggestion of the Court in caption *Fifth* that the government's complaint does not state a cause of action, seems unwarranted. Certainly the government is not required to plead all its evidence. Since the complaint alleged fraud and specified in paragraph 6 thereof the circumstances constituting fraud, set out in the first paragraph of this dissent, I think *Knauer* v. *United States,* 328 U. S. 654, belies the suggestion that the complaint is defective.

Thus I dissent from the suggestion that the judgment against Klapprott can be vacated as void under Rule 60 (b) (4).

*Second.* The Court holds that petitioner is entitled to relief under (6), the "other reason" clause of Rule 60 (b). This follows, it is said, from his allegations that he was held in custody and subjected to several criminal prosecutions by the United States. As I see it, such allegations add nothing to the single ground on which relief could have been based, *i. e.,* "mistake, inadvertence, surprise, or excusable neglect." Rule 60 (b) (1). I do not mean to say that an arrest and a subsequent period of imprisonment which interfered to the extent of depriving him of the opportunity to get legal assistance or the ability to litigate would not entitle him to relief. In view of the facts set out in petitioner's own affidavit,

however, it is difficult to see how imprisonment subjected him to any injustice in this case or how it furnishes him with an additional ground for relief. Thus petitioner does not allege that he requested the return to him or the mailing of his letter to the American Civil Liberties Union. He does not, in fact could not, claim that imprisonment deprived him of the right to counsel. On the contrary he admits that counsel was made available in time to enter an appearance in the denaturalization proceeding, but that counsel negligently failed to do so. Petitioner's ability to litigate during this period of purportedly drastic confinement is illustrated by the fact that in 1945, as stated in his affidavit, he began and continued until its unsuccessful termination a suit to enjoin the Department of Justice from deporting him.

Since the facts alleged amount to a showing of mistake, inadvertence, or excusable neglect only, and since a definite time limit of one year is imposed on relief based on these grounds, the Rule cannot be said to contemplate a remedy without time limit based on the same facts. Otherwise the word "other" in clause (6) is rendered meaningless.[6]

The Court intimates that petitioner was woefully mistreated by the government. If by this it is meant that he is entitled to relief from judgment based on "misconduct of an adverse party," Rule 60 (b) (3), the answer is that relief on this ground is limited to one year from the judgment. On analysis, however, the suggestion that petitioner's trials have been carried on in a way contrary to concepts of justice as understood in the United States and in a manner incompatible with the pattern of American justice falls flat in view of the simple facts. Klapprott had counsel and open hearings. The courts have cleared him of complicity in a conspiracy to impede the

---

[6] Cf. *Wallace* v. *United States,* 142 F. 2d 240, 244.

raising of an army and have dismissed a prosecution for seditious conspiracy. To be cleared on these charges can have no effect upon the propriety of his deportation for violation of our naturalization laws.

The limitations imposed by Rule 60 (b) are expressions of the policy of finally concluding litigation within a reasonable time. Such termination of lawsuits is essential to the efficient administration of justice. I would not frustrate the policy by allowing litigants to upset judgments of long standing on allegations such as Klapprott's.

MR. JUSTICE FRANKFURTER, dissenting.

American citizenship other than when acquired by birth rests on a judicial judgment of naturalization. *Tutun* v. *United States,* 270 U. S. 568. Congress has explicitly defined the procedures for annulling such a judgment. *Johannessen* v. *United States,* 225 U. S. 227; *Luria* v. *United States,* 231 U. S. 9; § 15 of the Act of June 29, 1906, 34 Stat. 596, 601, now formulated in 54 Stat. 1158, 8 U. S. C. § 738. Neither in its terms nor on a fair interpretation of our naturalization laws has Congress indicated that such a judgment—the certificate of naturalization—cannot be annulled by default, that is, without active contest against such annulment, provided that ample opportunity has in fact been afforded to a citizen to contest. This Court is not justified in adding a requirement to the cancellation proceedings that Congress has seen fit to withhold unless some provision of the Constitution so demands. The only possible provision on which an argument can be based that citizenship cannot be canceled by a default judgment is the Due Process Clause of the Fifth Amendment. I reject the suggestion that it offends due process for a judgment of naturalization obtained by fraud to be set aside if the defrauding alien is afforded ample opportunity to contest the Gov-

ernment's claim that he obtained his citizenship through fraud and chooses not to avail himself of that opportunity but allows a judgment of cancellation to go by default.

But in rejecting the contention that citizenship cannot be lost by a default judgment, one does not necessarily embrace the other extreme of assimilating a naturalization judgment to any other civil judgment. This Court has held that because a naturalization judgment involves interests of a different order from those involved in other civil proceedings, the annulment of such a judgment is guided by considerations qualitatively different from those that govern annulment of ordinary judgments. *Schneiderman* v. *United States,* 320 U. S. 118; *Baumgartner* v. *United States,* 322 U. S. 665. The considerations that set a contested proceeding for cancelling a naturalization judgment apart from other suits to annul a judgment, are equally relevant to a default judgment causing such cancellation. To be sure, the public interest in putting a fair end to litigation and in not allowing people to sleep on their rights has its rightful claim even in proceedings resulting in deprivation of citizenship. But because citizenship has such ramifying significance in the fate of an individual and of those dependent upon him, the public interest to be safeguarded in the administration of justice will not be neglected if courts look more sharply and deal less summarily when asked to set aside a default judgment for cancellation of citizenship than is required of them in setting aside other default judgments.

It is in the light of these general considerations that I would dispose of the present case. I deem it governed by the liberalizing amendment to Rule 60 (b) of the Federal Rules of Civil Procedure even though that became effective after the decision below. It is of course not a hard and fast rule that procedural changes are

to be prospectively applied to a pending litigation at any stage at which it may be possible to do so without working an injustice. But since citizenship is at stake and this is in effect an appeal in equity to be dealt with as of the time of adjudication, it seems more consonant with equitable considerations to judge the case on the basis of the Rule now in force, even though the lower court did not have the opportunity to apply it.

If the petitioner had paid no attention to the proceeding brought to revoke his citizenship, he would, in my opinion, have no ground for opening up the default judgment simply because during all the years in question he was incarcerated. Men can press their claims from behind prison walls, as is proved by the fact that perhaps a third of the cases for which review is sought in this Court come from penitentiaries. But Klapprott was not indifferent to the proceeding to set aside his citizenship. He took active measures of defense which were aborted through no fault of his own. To be sure, he did not follow up these efforts, but what he is saying in the motion made after his criminal cases were ended is in substance that he was so preoccupied with defending himself against the dire charges of sedition (the conviction for which this Court set aside in *Keegan* v. *United States*, 325 U. S. 478) and the threat of deportation, that the New Jersey cancellation proceeding naturally dropped from his mind after he had taken what he thought appropriate steps for his protection. The Government in effect demurred to this contention and the District Court's action, affirmed by the Court of Appeals, practically ruled as a matter of law that the claim of Klapprott, even if true, affords no relief. It is to me significant that one of the two affirming judges of the Court of Appeals decided the case largely on a close reading of the old Rule 60 (b) and that the other rested his case on laches, while this Court fails to draw on laches for the support of its conclusion.

Rule 60 (b) now provides five grounds for relief from default judgments and a sixth catch-all ground, "any other reason justifying relief from the operation of the judgment." [1] The only one of the first five reasons to which Klapprott's conduct, as explicitly narrated, may plausibly be assigned is that of "excusable neglect," relief from which must be obtained within a year after a default judgment. But I think that if the inferences fairly to be drawn from the circumstances narrated by Klapprott were found to be true, they would take his case outside of the characterization of "neglect," because "neglect" in the context of its subject matter carries the idea of negligence and not merely of non-action, and would constitute a different reason "justifying relief from the operation of the judgment." When a claim for citizenship is at stake, we ought to read a complaint with a liberality that is the antithesis of Baron Parke's "almost superstitious reverence for the dark technicalities of special pleading."

---

[1] "RULE 60. RELIEF FROM JUDGMENT OR ORDER.

.           .           .           .           .

"(b) MISTAKES; INADVERTENCE; EXCUSABLE NEGLECT; NEWLY DISCOVERED EVIDENCE; FRAUD, ETC. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59 (b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. . . ."

See 15 Dict. Nat. Biog. 226. Therefore, what fairly emanates from such a complaint should be treated as though formally alleged. And so I would not deny Klapprott an opportunity, even at this late stage, to establish as a psychological fact what his allegations imply, namely that the harassing criminal proceedings against him had so preoccupied his mind that he was not guilty of negligence in failing to do more than he initially did in seeking to defend the denaturalization proceeding. But I would not regard such a psychological issue established as a fact merely because the Government in effect demurred to his complaint. Since the nature of the ultimate issue—forfeiture of citizenship—is not to be governed by the ordinary rules of default judgments, neither should the claim of a state of mind be taken as proved simply because the Government, feeling itself justified in resting on a purely legal defense, did not deny the existence of that state of mind.

To rule out the opportunity to establish the psychological implications of the complaint would be to make its denial a rule of law. It would not take much of the trial court's time to allow Klapprott to establish them if he can. The time would be well spent even if he should fail to do so; it would be more consonant with the safeguards which this Court has properly thrown around the withdrawal of citizenship than is the summary disposition that was made. But I would require Klapprott to satisfy the trial judge that what he impliedly alleges is true, and it is here that I part company with the majority.