## UNITED STATES v. OLDEN.

United States District Court
S. D. New York.
June 10, 1949.

John F. X. McGohey, United States At-torney for the Southern District of New York, New York City; Harold J. Raby, New York City, of counsel, for plaintiff.

George G. Shiya, New York City, for de-fendant.

RIFKIND, District Judge.

Defendant moves for an order vacating a judgment of denaturalization entered in this court against him on July 7, 1942. The judgment was entered on written consent of the defendant, without a hearing or inquest.

It appeared from the record that the complaint had charged the defendant with fraudulently and illegally procuring his naturalization on December 12, 1933, "(a) in that at the time of the filing of his petition for naturalization and at the time he was admitted to citizenship, he was not attached to the principles of the Constitution * * * (b) * * * he did not intend to renounce or abjure all allegiance and fidelity to German Reich; (c) he took the said oath of allegiance with a mental reservation which nullified the oath; (d) * * * he did not intend to support and defend the Constitution * * * (e) * * * he did not intend to bear true faith and allegiance to the United States and the Constitution and laws thereof; (f) since being admitted to citizenship he has not supported and defended the Constitution * * * and has not borne true faith and allegiance to the United States and the Constitution and laws thereof." The complaint specified, in support of those allegations, that "(a) Approximately three years thereafter [i. e., after his admission to citizenship] he became an active member of the Amerika-deutsche Volksbund * * * (b) During the year 1940, he indicated his intention to return to Germany to live there permanently * * * (c) In May 1942, he registered with his Local Draft Board as unwilling to enter the armed forces of the United States and thereafter on June 18, 1942 he said he refused to fight for the United States against Germany. (d) On the same occasion in 1942, he stated that despite his oath of allegiance to the United States upon becoming an American citizen, his loyalty has always been to his Father-land, Germany. (e) Since his naturalization and after the advent of war between

Germany and the United States, he asserted that he hoped Germany would be victorious in the present war."

■ Since the government is limited in its proof to the matters charged in the complaint, Schneiderman v. United States, 1943, 320 U.S. 118, 159, 63 S.Ct. 1333, 87 L.Ed. 1796; United States v. Hauck, 2 Cir., 1946, 155 F.2d 141, 147, and those allegations because, in the main, they relate to conduct subsequent to the event, may be insufficient to establish illegal and fraudulent procurement of naturalization, Baumgartner v. United States, 1944, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525, the consequence of vacating the judgment may be dismissal of the complaint upon motion. Be that as it may, the defendant urged, and the government conceded, that I have jurisdiction, under Rule 60(b), Federal Rules of Civil Procedure, 28 U.S.C.A., to hear and determine the question of the validity and effect of defendant's consent to denaturalization. Cf. Klaprott v. United States, 1949, 335 U.S. 601, 336 U.S. 942, 69 S.Ct. 384.

I, therefore, held a hearing and took evidence to determine the factual question whether defendant's consent to denaturalization was truly voluntary and consciously intended by him to effect the surrender of his citizenship.

■ Had the hearing revealed such conscious intent, it might have become necessary to consider the effect, if any, of the most recent Supreme Court decisions, upon the propositions that a voluntary and conscious consent to denaturalization bars the consenter from any relief, United States v. Borchers, 2 Cir., 1947, 163 F.2d 347, and that a consent judgment rendered without inquest or hearing may be invalid. Cf. Klaprott v. United States, supra, 335 U.S. at page 616, 69 S.Ct. at page 391, concurring opinion by Rutledge, J.

But the hearing on the motion established that defendant's consent, though given without duress or coercion, was not an intentional surrender of citizenship made by one possessed of understanding of the proceedings or awareness of his rights and of the consequences of his act.

Defendant was born in Germany in 1902, entered the United States in 1927, was married in 1932, and naturalized in 1933. He was an automobile mechanic. Defendant was questioned by an Assistant United States Attorney on June 18, 1942, and served with a summons and complaint on July 8, 1942. On September 8, 1942 he was called to the United States Attorney's office and after some conversation with the same Assistant, he signed and acknowledged a consent to judgment of denaturalization. He had no attorney at any time. The government did not advise him of his right to retain counsel. Upon the trial, he exhibited so limited a command of English that I found it desirable to utilize the services of an interpreter. That his command of English was no less limited in 1942, when he signed the consent, not only follows a fortiori, but is borne out by the stenographic transcript of his interrogation by the Assistant United States Attorney on June 18, 1942. Because of his mediocre linguistic and intellectual abilities and his Nazi associations and proclivities, it is credible that he was unaware of his right to retain and be represented by counsel. In any case, I do not believe that the defendant understood the consent, or realized, when he signed it, that he was giving up his citizenship, thereby becoming an enemy alien who might be (as, in fact, he was,) incarcerated for the next six or seven years, and then subject to removal.

That the defendant took no appeal is no bar to present relief. He was quite unaware of his rights and could hardly have been expected to appeal from a consent judgment the nature of which he did not really comprehend. Furthermore, judgment was rendered the same day the consent was signed, and the defendant was immediately confined in a detention camp. He was not released until a few months ago. While confinement alone might not necessarily excuse failure to appeal, cf. United States v. Kunz, 2 Cir., 1947, 163 F.2d 344, the absence of counsel at any stage of the proceedings and the defendant's failure to understand what it was all about, sufficiently distinguish this case from the Kunz case and excuse failure to appeal.

Motion to vacate the judgment is granted. Submit order.