**Robert M. HENSLEY, Plaintiff,**

v.

**CHESAPEAKE & OHIO RAILWAY COMPANY, a corporation, Defendant.**

**Civ. A. No. 77–2401.**

United States District Court, S. D. West Virginia, Charleston Division.

June 5, 1980.

Fred Adkins, Huntington, W. Va., for plaintiff.

Willard J. Moody, Portsmouth, Va., W. Stuart Calwell, Jr., Charleston, W. Va., for defendant.

## MEMORANDUM OPINION

DENNIS R. KNAPP, Chief Judge.

Plaintiff instituted this action against his employer, The Chesapeake & Ohio Railway Company ("the railroad"), under the provisions of the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.*, seeking monetary damages for personal injuries received while in the course of his employment as a result of the alleged negligence of the railroad. On March 14, 1979, trial was commenced before this court and a jury, resulting in the jury's returning a verdict on March 16, 1979, in favor of the plaintiff in the sum of $40,000. Judgment for said amount was entered on that day in favor of the plaintiff.

Representing the plaintiff were Willard J. Moody, Esquire, of Portsmouth, Virginia, and W. Stuart Calwell, Jr., Esquire, of Nitro, West Virginia.[1] Fred Adkins, Esquire, of Huntington, West Virginia, represented the railroad.

On March 23, 1979, pursuant to Rule 59, Federal Rules of Civil Procedure, plaintiff filed a motion asking for a new trial on the single issue of damages or, alternatively, on "all of the issues herein."

On June 12, 1979, an order was entered denying plaintiff's motion for a new trial in its entirety. The order directed the clerk to mail "certified copies of this order to counsel of record herein."

The June 12, 1979 order constituted a "final order" from which an appeal would lie. See, Rule 4(a), Federal Rules of Appellate Procedure. However, no notice of appeal or any other documents were filed in this matter by plaintiff's counsel until October 22, 1979. On that day plaintiff by his counsel filed a motion asking the court to extend the time in which to appeal from the June 12 order. Alternatively, he moved the court to vacate the June 12 order under the provisions of Rule 60(b)(6), Federal Rules of Civil Procedure, and to re-enter the order so as to allow the time in which to file a notice of appeal to commence anew.

In support of the motion, affidavits have been filed by Messrs. Moody and Calwell and by Mr. Calwell's secretary, all to the effect that none of the affiants had received a copy of the June 12 order from the clerk.

Attached to the Moody affidavit is a letter from the plaintiff to Mr. Moody dated July 17, 1979, in which the plaintiff asked whether ". . . Judge Knapp grant[ed] a new trial."[2] Mr. Moody responded to this inquiry in a letter to the plaintiff dated July 25, 1979, in which he (Mr.‾ Moody) stated that he had "not heard a word from Judge Knapp" regarding the motion. Mr. Moody went on to say that "we will appeal the case to the Fourth Circuit if [Judge Knapp] decides against a new trial."[3]

In a letter dated September 25, 1979, to the undersigned judge, Mr. Moody requested "the benefit of your decision" on the motion for a new trial. Copies of that letter were sent to Messrs. Calwell and Adkins. On September 28, 1979, in response to that letter, Mr. Moody was advised by the Clerk's Office via telephone that an order denying the motion for a new trial had been entered on June 12, 1979. On October 1, 1979, Moody received a copy of that order.[4]

In opposition to plaintiff's motion, Mr. Adkins has filed an affidavit wherein he states that on June 14, 1979, he received

1. Mr. Calwell served merely as local counsel as required by the local rules of this court.

2. The full text of the letter reads as follows:
"Dear Mr. Moody,
Since I haven't corresponded with you recently I am wondering if there have been any new developments in my case.
Did Judge Knapp grant a new trial? or has the case been appealed to the Circuit Court in Richmond?
I am wondering also if you have received a report from Dr. Rohani in Beckley?
Hoping to hear from you soon, I remain,
Very truly yours,
/s/ Robert M. Hensley
Robert M. Hensley"

3. In its entirety the letter reads:
"Dear Bob:
Thank you for your letter inquiring as to the status of your case.
We have not heard a word from Judge Knapp. As you know, a Federal Judge can take as long as he likes to decide a case and I do not know what his decision will be. I do not know of any way to force him to make his decision, but I assume he will be making a decision in the matter in the not too distant future.
I have not received a report from Dr. Rohani but I will be sure that he received our letter and urge him to give us such report.
Of course, you understand that we cannot do anything further until Judge Knapp gives us his decision, after which we will appeal the case to the Fourth Circuit if he decides against a new trial. We will certainly advise you of any developments in connection with the case.
With best regards, I remain
Very truly yours,
Willard J. Moody"

4. None of what is contained in any of the affidavits filed has been contradicted. Thus, the court will take as true the allegations contained therein.

from the office of the clerk of the court a certified copy of the June 12, 1979 order. Additionally, the railroad has filed a certified copy of the docket sheet in the case which shows the following docket entry:

"Jun 12 . . . ORDER: Denying pltff's mtn for new trial CC to counsel"

■ Respecting appeals from final orders of the district court, Rule 4(a), Federal Rules of Appellate Procedure, mandates the filing of a notice of appeal within 30 days of the entry of such final order. The stated exception provided for in the rule is that "[u]pon a showing of excusable neglect, the district court may extend the time for filing the notice of appeal by any party for a period not to exceed 30 days from the expiration of time otherwise prescribed by this subdivision." It is universally held that after the expiration of the second thirty-day period, a district court is without jurisdiction to grant a further extension of time in order to permit a party to file a notice of appeal. *Evans v. Jones*, 366 F.2d 772, 773 (4th Cir. 1966); *Lord v. Helmandollar*, 348 F.2d 780, 782 (D.C.Cir.1965). A court of appeals only acquires jurisdiction of an appeal when a timely notice of appeal has been filed. *Gooch v. Skelly Oil Co.*, 493 F.2d 366 (10th Cir. 1974). This is the case even when the clerk through inadvertence did not send a copy of a final order to the non-prevailing party or failed otherwise to give notice of the entry of the judgment as required by Rule 77(d). Rule 77(d) further states that such lack of notice "does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed . . . ." Thus, once the 60 days has elapsed without a notice of appeal having been filed, the judgment becomes final. The district court then is powerless to grant any relief under Rule 4, Federal Rules of Appellate Procedure.

Nevertheless, a party is not necessarily foreclosed from obtaining relief from a judgment that has become final by reason of the expiration of time limits set forth in Rule 4(a), supra.

Rule 60(b), Federal Rules of Civil Procedure, provides in pertinent part:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. . . ."

■ Founded on equitable principles, clause (6) empowers a district court to vacate a final judgment whenever such action is appropriate to accomplish justice. As ever so correctly pointed out by the railroad, the clause may not be used as a substitute for not having timely filed a notice of appeal. *Hodgson v. United Mine Workers of America*, 473 F.2d 118 (D.C.Cir.1972). But under circumstances "justifying relief, the district court may invoke the 60(b)(6) clause when to do so would accomplish justice." See, generally, 7 Moore's Federal Practice ¶ 60.27[2].

Predicating its action on the provisions of Rule 60(b)(6), the Supreme Court in *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949), set aside a judgment rendered adverse to Klapprott some four years subsequent to that judgment having become final. The facts showed that Klapprott had been served with notice of a hearing involving the cancellation of his certificate of naturalization granted to him nine years previously. Shortly before the time he was required to answer the complaint filed against him, Klapprott was arrested and jailed on federal criminal charges. Because of Klapprott's

absence at the hearing, the court summarily entered a default judgment against him and set aside his certificate of naturalization. Four years later, while still a federal prisoner, Klapprott filed a motion in the district court to set aside the default judgment which by that time had of course become final.

The Supreme Court reversed the Court of Appeals' decision upholding the district court's denial of Klapprott's motion to set aside the denaturalization judgment.

The Court held that when the underlying facts upon which a party bases his claim for relief show more than "a failure to [act] due to inadvertence, indifference, or careless disregard of consequences," relief under Rule 60(b)(6) may be granted. *Klapprott v. United States*, supra, at p. 613, 69 S.Ct. at p. 389:

"In simple English [Justice Black wrote], the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." Id. at 614–615, 69 S.Ct. at 390.

In *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), the district court on December 7, 1943 entered a judgment order against Ackermann, his wife and a relative cancelling their certificates of naturalization. Ackermann and his wife did not prosecute an appeal from that order. More than four years later, the Ackermanns filed a motion in the district court under the provisions of Rule 60(b)(6) to vacate the 1943 order, which motion was overruled.

Ackermann maintained that by reason of his not being able to afford an appeal without resorting to selling his home to obtain the necessary funds to do so, justified his failure to appeal the judgment. Additionally, he maintained that his alien control officer had advised him not to dispose of his home because they would be released from interment after the war.

The Ackermann court upheld the affirmance by the Court of Appeals of the district court's denial of Ackermann's motion on the basis that the evidence showed that:

"[Ackermann] made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home. His choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong, considering the outcome of the *Keilbar* [v. United States, 5 Cir., 144 F.2d 866] case. There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." 340 U.S. at p. 198, 71 S.Ct. at p. 211 & 212.

The court went on to point out with particularity the distinguishing features between *Klapprott* and *Akermann*:

"By no stretch of the imagination can the voluntary, deliberate, free, untrammelled choice of petitioner not to appeal compare with the Klapprott situation. . . . Id. at p. 200, 71 S.Ct. at p. 212.

". . . The comparison strikingly points up the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance of negligence and inexcusable negligence. . . Id. at p. 202, 71 S.Ct. at p. 213."

In *United States v. Cato Brothers, Inc.*, 273 F.2d 153, 157 (4th Cir. 1959), Judge Soper stated:

"In general, relief from judgments has been given under subsection (6) in cases where the judgment . . . resulted from the excusable default of the party against whom it was directed under circumstances not covered by subsections (1) to (5) which, in the opinion of the court, required the application of subsection (6) in order that . . . justice be done; but in these instances the substantial rights of the parties . . . were not affected."

■ We see neither party being prejudiced by a vacation of the June 12 order, nor has the railroad shown or otherwise argued that it would be put upon by this case being restored to the status quo ante.

The decided disadvantage to the plaintiff is that without relief, he is without an opportunity to have this court's decision reviewed on appeal. *Smith v. Jackson Tool & Die, Inc.*, 426 F.2d 5 (5th Cir. 1970).

In *Jackson Tool* none of the parties had been given notice of entry of the judgment order but were under the mistaken belief that the form of the judgment was still under consideration by the court. The Fifth Circuit reasoned:

"The policy of finality of judicial proceedings is, and indeed it should be, a strong one, but in the face of unusual factors, equitable principles encompassed within Rule 60(b) justify further inquiry. Rule 60(b)(6) provides that the trial court may grant relief for 'any other reason justifying relief from the operation of the judgment.' It has been said that this rule's purpose is to make available those grounds which equity has long recognized as a basis for relief. [Footnote omitted] "In ruling on a motion to vacate, equitable considerations including lack of prejudice to defendant and prejudice to plaintiff must be given consideration. And often, the interest of ruling on a motion on the merits outweighs the interest in orderly procedure and in the finality of judgments." 426 F.2d at p. 8.

■ More recent cases have held that the moving party in order to prevail under a 60(b)(6) motion must show that he acted with "due diligence" in making an effort to determine the status of the case. *Buckeye Cellulose Corp. v. Braggs Electric Const. Co.*, 569 F.2d 1036 (8th Cir. 1978).

■ Once the objective standard of "due diligence" is imposed on a party, the question becomes how much diligence is due. That standard must be measured subjectively.

We would agree with the court in *In Re: Morrow*, 502 F.2d 520, 523 (5th Cir. 1974),

that "[t]o permit an appeal [when] there is failure to notify, without more, would be opposed to the clear wording and intent of Rule 77(d)." Without "more," granting relief under Rule 60(b)(6) would be tantamount to substituting that rule for Rule 4(a).

In *Buckeye Cellulose Corp. v. Braggs Electric Const. Co.*, supra, Buckeye's counsel within a one-week period inquired three times at the clerk's office regarding any action the court may have taken on cross-motions for summary judgment which had been submitted to the court for decision a month prior to the first inquiry. After each inquiry, counsel was advised that no action had been taken but that notice would be sent to counsel when a decision was issued. On April 1, 1976, some two weeks after the last inquiry was made by Buckeye's counsel, the court filed its opinion and judgment adverse to Buckeye. The clerk, however, did not notify any of the parties or their lawyers of the court's decision.

It was not until nearly a year later, on March 28, 1977, that each counsel was apprised of the entry of the April 1, 1976 judgment order. On April 13, 1977 Buckeye filed a motion to extend the time in which to appeal. On April 22, 1977, the court denied the motion as being without jurisdiction to entertain it.

On May 13, 1977 Buckeye filed a motion to reconsider, pursuant to the provisions of Rule 60(b)(6). On the grounds that it was also without jurisdiction to grant any relief under Rule 60(b)(6), this motion too was denied.

The Eighth Circuit reversed, holding that the district court did have jurisdiction to rule on the 60(b)(6) motion and that the facts of the case warranted the district court's vacating the judgment order and re-entering a like order so as to allow an appeal on the merits.

It will be remembered that Hensley's Rule 59 motion filed on March 23, 1979, and argued on April 26, 1979, assigned 16 grounds in support thereof. We believe that plaintiff's counsel could fairly assume

that a decision of the motion could very well take the court some time to consider of its decision. This is evident by the plaintiff's motion filed on June 1, 1979, asking the court to enter an order allowing the depositing of the $40,000 judgment sum, which the railroad had theretofore deposited with the clerk of the court, in an interest bearing account. An appropriate order granting that motion was entered on June 1, 1978. It was reflected in the order that plaintiff had made a motion for a new trial and that if the court were to overrule the motion, an appeal would follow.

It would not be beyond reason that plaintiff's out-of-state counsel could possibly believe in good faith that the court's decision on the motion might not be handed down as soon as it was. The court can understand that perhaps Virginia counsel might have some misgivings concerning communicating with the court regarding the motion, lest he be proceeding in harm's way.

At any rate, once counsel did correspond with the court, it was not to inquire as to the status of the decision but rather to ask the court to make a decision. Within a reasonable time after receiving a certified copy of the June 12 order, plaintiff's counsel filed the instant motion.

The Court has concluded that plaintiff has sufficiently brought himself within the provisions of Rule 60(b)(6) and that he is entitled to relief from the June 12, 1979 order. An appropriate order in accordance with this memorandum opinion shall therefore issue.