# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

RANDY DAVID WILSON,     )
    )
    Defendant/Appellant,     )
    )
       v.     )     Case No.: CPU4-19-004583
    )
DELMARVA POWER AND     )
LIGHT COMPANY,     )
    )
    Plaintiff/Appellee,     )
    )
       v.     )
    )

Submitted: September 29, 2020
Decided: November 30, 2020

Paul G. Enterline, Esq.
Paul G. Enterline, P.A.
113 South Race Street
P.O. Box 826
Georgetown, DE 19947
*Attorney for*
*Defendant-Below/Appellee*

Lisa C. McLaughlin, Esq.
Paul S. Seward, Esq.
Phillips Goldman McLaughlin
& Hall, P.A.
1200 North Broom Street
Wilmington, DE 19806
*Attorneys for*
*Plaintiff-Below Appellee*

## OPINION AND ORDER

**Manning, J.**

## FACTUAL AND PROCEDURAL HISTORY

On February 15, 2019, Plaintiff-Below/Appellee Delmarva Power & Light Co., ("Delmarva") filed a Complaint in the Justice of the Peace Court against Defendant-Below/Appellant, Randy David Wilson, ("Wilson") and Defendant-Below Robert John Daniels ("Daniels")[1] to recover $10,813.17 in damages, plus costs and interest. Delmarva alleged that on or about May 27, 2017, a vehicle owned by Wilson and Daniels struck a utility pole owned by Delmarva.

On April 8, 2019, Wilson was served and, on advice from a family member, filed a form Answer on April 16, 2019, in which he demanded a trial. On April 29, 2019, a Trial was scheduled for July 17, 2019, in the Justice of the Peace Court, and notice was sent out to the parties. However, Wilson failed to appear for trial and, consequently, the court entered judgment against him in the amount of $10,813.17. Daniels also failed to appear for trial, and default judgment was likewise entered against him in the amount of $10,813.17.

On September 23, 2019, Delmarva filed a Request for a Certified Copy of Judgment, which was issued on September 27, 2019, with Transcript of Judgment and Execution for Transfer to Superior Court.

Wilson claimed he only became aware of the default judgment when he received a letter from counsel for Delmarva dated October 4, 2019, directed to the

---

[1] Daniels is not a party to this appeal.

2

Department of Motor Vehicle, regarding the suspension of Wilson's driver's license. A few days later, Wilson contacted counsel for Delmarva to discuss the matter and received a follow-up letter from counsel dated October 18, 2019. Five days later, on October 23, 2019, Wilson retained counsel, and on October 25, 2019, Wilson's counsel mistakenly filed a Motion to Vacate the default judgment in Superior Court.[2] On November 6, 2019, the filing error was corrected, and the Motion to Vacate was properly filed in the Justice of the Peace Court.

On November 15, 2019, the Justice of the Peace Court held a hearing on Wilson's motion to vacate. Ultimately, the court denied Wilson's motion due to a lack of excusable neglect or extraordinary circumstances, as well as filing of an extremely untimely motion.[3]

On November 27, 2019, Wilson timely filed an appeal of the decision of the Justice of the Peace Court's Order denying his Motion to Vacate to the Court of Common Pleas.

On February 19, 2020, a hearing was held in this Court on the Motion to Vacate, at the conclusion of which I reserved decision and scheduled the matter for an Evidentiary Hearing.

---

[2] Judgment was filed in Superior Court for execution purposes.
[3] Del. J.P. Order, C.A. No. JP13-19-002206, Portance, J. (Nov. 15, 2019).

## EVIDENTIARY HEARING

After numerous delays due to the on-going COVID-19 pandemic, the Evidentiary Hearing took place on September 29, 2020. At the hearing, I heard testimony from two witnesses, Wilson's brother, David Wilson ("David"), and Wilson himself.[4] First, David testified that in 2019 he owned the property Wilson lived on with his mother and another tenant, Robert Lusby ("Lusby"), in rural Harrington, Delaware. The property was relatively large and contained multiple buildings, including a repair shop, a live-in camper, and a separate dwelling. David testified that the property received all mail at the same address in one central mailbox. David explained that in March of 2019, Wilson lived in the back of the shop, Lusby lived in the separate dwelling out front, and that David's mother lived in the camper. Lusby had lived there for about five years, but due to on-going problems, he was evicted on March 21, 2019, and ultimately vacated the property in June. David elaborated that Lusby acted as the unofficial "keeper of the mail" and would usually deliver it to the various other tenants when he lived there. David stated that even after being evicted, he observed Lusby return to the property on numerous occasions over the next year to retrieve his mail. David noted that after the eviction his relationship with Lusby became strained and violent due to Lusby's

---

[4] To avoid confusion, I will refer to Plaintiff's brother solely by his first name of David throughout.

4

continued drug use and money Lusby owed to David.

Further, David testified to a conversation he had with Daniels, a friend, and longtime employee. Daniels told him that he had been trying to get in touch with Wilson "about a lawsuit." Daniels told David that his vehicle had been stolen and "there was nothing [for Wilson] to worry about" because he would "take care of it." David testified that he informed Wilson what Daniels had told him.

Next, Wilson testified and explained the car "arrangement" he had with Daniels. According to Wilson, the vehicle in question was purchased by Daniels through Daniels' wife, who was a salesperson for Preston Ford, Inc. Wilson thought he was only co-signing to help Daniels secure financing for the vehicle. Wilson maintained that, despite his name being on the title, he never at any time possessed or operated the vehicle. After filing his Answer to Delmarva's lawsuit, Wilson attempted to reach out to Daniels multiple times with no luck, so when he heard from David that Daniels confirmed the matter had been taken care of, he said that he believed it was.

Wilson testified he never received notice of the trial in J.P. Court— presumably due to the falling out with a Lusby with whom he shared a mailbox. However, as soon as he found out about the entry of default judgment, he acted.

Finally, it is important to note that during the Evidentiary Hearing, Delmarva did not offer any evidence to rebut Wilson or David's testimony. Furthermore,

5

Delmarva conceded that Wilson would have a meritorious defense at trial because Delmarva would not be able to prove that Wilson had custody or control of the vehicle at the time of the accident or would be in any way liable for the accident.

At the conclusion of the Evidentiary Hearing, I reserved decision. This is my decision after consideration of the arguments and evidence presented at the Hearing.

## PARTIES POSITIONS

In its briefing to the Court and at oral argument, Delmarva argues that the appropriate standard of review to be applied to the Motion to Vacate the Default Judgment is an abuse of discretion standard. Moreover, Delmarva argues that even if the Court finds that the applicable review is *de novo*, under Rule 60(b)(1) Wilson's neglect was not excusable. Delmarva further argues if the Court finds that Wilson's conduct was excusable, under Rule 60(b)(6), the "extraordinary circumstances" test is not met and the Motion to Vacate the Default Judgment should be denied.

In contrast, Wilson asserts that the appropriate standard of review is *de novo*, and that relief from judgment under Rule 60(b)(1) is appropriate because Wilson's neglect was excusable, his defense is meritorious and Delmarva will not suffer substantial prejudice if relief is granted. Additionally, Wilson argues, under Rule 60(b)(6), Wilson also meets the "extraordinary circumstances test."

6

## DISCUSSION

### A. Applicable Standard of Review

I recognize that there are inconsistencies in the application of the standard of review in appeals from the Justice of Peace Court to the Court of Common Pleas. Cases that support both the *de novo* and abuse of discretion standard of review exist.[5] However, after reviewing the relevant statutes and case-law, I am satisfied that 10 *Del. C.* § 9571 "requires an independent determination of the merits of the matter on appeal"—that is, a *de novo* review, as the statute requires.[6]

Notwithstanding the line of cases in which an abuse of discretion review was applied, the relevant statute, 10 *Del. C.* § 9571, was amended in 1991 to specify that such appeals shall be "*de novo.*" Prior to 1991, the right to appeal from a decision of the Justice of the Peace Court was set forth in 10 *Del. C.* § 9570, which did not specify the applicable standard of review.[7]

---

[5] *See Krutz v. Pomerantz*, No. S15A-10-001 MJB, 2016 (Del. Super. Aug. 19, 2016) (ORDER) (analyzing diverging case law applying abuse of discretion and *de novo* standards of review).
[6] *Id.*
[7] Specifically, 10 Del. C. § 9570 provided:
    (a) A party against whom a judgment is given by a justice of the peace may appeal to Superior Court if the judgment is given without a referee trial, and the amount exceeds $5, exclusive of costs.
    (b) A plaintiff or defendant, as the case may be, may appeal to the Superior Court on a judgment given by a justice of the peace if the judgment is given without a referee trial, and any part of the plaintiff's demand, or the defendant's counterclaim or setoff, exceeding $5 is disallowed or defalked.

7

In 1991, 10 *Del. C.* § 9571 was amended and now explicitly calls for a *de novo* review:

> § 9571 Appeal in civil actions.
> (a) From any final order, ruling, decision or judgment of the Court in a civil action there shall be the right of appeal to the Superior Court of the State in the county in which said order, ruling, decision or judgment was rendered.
> (b) The appeal shall be taken within fifteen days of the final order, ruling, decision or judgment.
> (c) The appeal shall be a trial de novo.
> (d) The Superior Court shall establish appeal procedures and supersedeas bond requirements by rule.[8]

In 1992, following the 1991 statutory amendment, *Kenyon v. Setting* was decided, and set new precedent by applying a *de novo* review to an appeal of a Justice of the Peace Court's denial of a motion to vacate.[9] Following *Kenyon*, a string of cases unequivocally solidified that *de novo* review is proper.[10] Specifically, as recently as 2015 and 2019, the Superior Court determined that a hearing on a motion to vacate a default judgment was to be *de novo* and not abuse of discretion.[11]

Intending no disrespect to my colleagues in the Court of Common Pleas or the Superior Court whom may have concluded otherwise, I find that reliance on case-

---

[8] Del. S.B. 88, 136th Gen. Assem. (1991). Note: In 1994, jurisdiction over appeals from the Justice of the Peace Court was transferred to the Court of Common Pleas, and 10 *Del. C.* § 9571 was further amended by striking "Superior Court" and replacing it with "Court of Common Pleas."
[9] *Kenyon v. Setting*, 1992 WL 52200, at *1-2 (Del. Super. Feb. 20, 1992).
[10] *See August v. Lin*, 2019 WL 3976040, at *1-5 (Del. Super. Aug. 20 2009); *Sharon Krutz Comfort Palace, LLC v. Pomerantz*, 2015 WL 5926933, at *1-3 (Del. Com. Pl. Oct. 8, 2015); *Montgomery v. Weemes*, 2006 WL 2641588, at *1 (Del. Com. Pl. Sept. 12, 2006); *Gilbert v. Nicholson*, 2006 WL 1476887, at *1 (Del. Com. Pl. Apr. 19, 2006).
[11] *August*, 2019 WL 3976040 at *1-5; *Pomerantz*, 2015 WL 5926933 at *1-3.

law that cites to the pre-1991 statute, or utilizes an abuse of discretion standard of review is misplaced. Based on the unambiguous mandate set forth in 10 *Del. C.* § 9571 that all appeals from the Justice of the Peace Court be reviewed *de novo* and relying on cases such as *Kenyon*, I will review the instant Motion to Vacate the Default Judgment *de novo*.

## B. Wilson's Motion to Vacate Default Judgment

Under Rule 60(b)(1), relief from a default judgment may be granted due to mistake, inadvertence, surprise, or excusable neglect if a court finds the plaintiff has met the three factors.[12] For public policy reasons, Delaware courts favor deciding cases on the merits over a resolution by default judgment.[13]

First, a court must analyze whether plaintiff has shown excusable neglect by determining if plaintiff's conduct was reasonable.[14] A court only needs to consider the second and third prongs of a meritorious defense and substantial prejudice to the defendant if excusable neglect has been found.[15]

Delaware courts have found a movant's conduct to be reasonable where the movant did not simply ignore the legal proceedings but believed in good faith that they had properly participated in the litigation.[16] In contrast, it is well established

---

[12] *Watson v. Simmons*, 2009 WL 1231145, at *2 (Del. Super. Apr. 30, 2009).

[13] *Green Tree Servicing LLC v. Hawkins*, 2013 WL 5314996, at *1 (Del. Super. Sept. 6, 2013).

[14] *Id.*

[15] *Johnson v. American Car Wash, Inc.*, 2012 WL 2914186, at *2 (Del. Super. July 17, 2012) (ORDER).

[16] *Hawkins*, 2013 WL 5314996 at *1.

9

under Delaware law that a complete disregard of legal proceedings does not qualify as reasonable behavior. For example, in *Apartment Communities Corp. v. Martinelli* and *Perry v. Wilson*, the court found that failing to answer the complaint and lack of understanding of the judicial process was not excusable neglect.[17]

However, unlike *Martinelli* and *Perry*, there is evidence in the record that Wilson's inaction after answering the Complaint was excusable. At the Evidentiary Hearing, Wilson and David testified, that after Wilson filed the Answer, Daniels told Wilson that the matter was taken care of. Since Wilson did not own the car or have any further interaction with it after it was purchased, and as an unsophisticated litigant, it is reasonable to determine that Wilson had not ignored the judicial process altogether and acted in good faith.

Furthermore, at the Hearing, Wilson and David testified to mailbox issues at Wilson's residence and the likelihood that he never received actual notice of the original trial. Similar to the case at hand, *Montgomery v. Weemes* involved a plaintiff who testified that she did not receive notice of a hearing due to shared mailbox issues.[18] This Court found that since she did not have actual notice of the hearing and filed a motion as soon as she learned for the default judgment, her conduct was that of a reasonably prudent person under the circumstances and there was a finding

---

[17] *Id.* at *3.
[18] *Montgomery*, 2006 WL 2641588 at *1.

10

of excusable neglect.[19]

Additionally, although there is no actual time limit for a plaintiff to file a Motion to Vacate, the time it takes to file the Motion is examined under excusable neglect and must be pursued diligently and without unreasonable delay.[20] Despite the three month gap from Trial to when the Motion was filed, within days of learning of the judgment, Wilson contacted counsel for Delmarva and then promptly hired an attorney who filed the Motion to Vacate. Under those circumstances, I find that Wilson timely reacted as a reasonable person would if they discovered a default judgment against them. Therefore, Wilson has met the burden of showing excusable neglect.

In addition to proving excusable neglect, Wilson has also met the burden of showing a meritorious defense and lack of substantial prejudice to Delmarva. On September 29, 2020, at the Evidentiary Hearing, Delmarva conceded that Wilson does have a meritorious defense. Additionally, Delmarva has not shown substantial prejudice that will be or may be suffered if the Motion to Vacated is granted and the case is litigated.

Finally, I find that vacating the default judgment is appropriate under the "extraordinary circumstances" test set forth in Rule 60(b)(6). Delaware has adopted

---

[19] *Id.*
[20] *Shipley v. New Castle County*, 975 A. 2d 764, 770 (Del. 2009).

11

the extraordinary circumstances test established by the United States Supreme Court, which "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."[21] In this case, based on the facts outlined herein, I find that justice dictates that the default judgment be vacated.

## CONCLUSION

For the foregoing reasons, the judgment is VACATED and the case REMANDED to the Justice of the Peace Court for a trial on the merits as to the Appealing Defendant.

**IT IS SO ORDERED**

Bradley V. Manning, Judge

cc:     Pat Thomas, Judicial Case Manager

---

[21] *Jewell v. Division of Social Services*, 401 A. 2d 88, 90 (Del. 1979), (quoting *Klapprott* v. *United States*, 335 U.S. 601, 615(1949)).