IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JARED E. PARKS,[1] | § | |
| | § | |
| Petitioner Below, | § | No. 291, 2025 |
| Appellant, | § | |
| | § | Court Below—Family Court |
| v. | § | of the State of Delaware |
| | § | |
| BELINDA J. CARVER, | § | File No. CK23-02408 |
| | § | Petition No. 23-21632 |
| Respondent Below, | § | |
| Appellee. | § | |

Submitted: December 5, 2025
Decided: February 11, 2026

Before **VALIHURA**, **TRAYNOR,** and **LEGROW**, Justices.

## ORDER

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The appellant ("Ex-Husband") filed this appeal from orders deciding matters ancillary to his divorce from the appellee ("Ex-Wife") and denying his motion seeking to reopen the judgment.  For the reasons discussed below, we reverse the Family Court's judgment to the extent that the court awarded Ex-Wife more than 70% of the proceeds from the prospective sale of the marital home.

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

(2)     The parties were married on April 14, 2017.  On September 14, 2023, Ex-Wife filed a petition for an order of protection from abuse ("PFA") alleging that Ex-Husband perpetrated various acts of abuse against her.[2]  On October 6, 2023, a Family Court Commissioner entered a PFA order against Ex-Husband; the Commissioner found that Ex-Husband abused Ex-Wife when he showed her a paintball gun that she believed to be real and made her sign a quit-claim deed to the marital residence.

(3)     Ex-Husband filed a petition for divorce on October 6, 2023; he did not ask the court to retain jurisdiction over ancillary financial matters.  He did file a petition for custody of the parties' minor child.  A divorce decree issued on November 22, 2023.  Five days later, Ex-Wife filed a motion to reopen the matter for the purpose of resolving property division and alimony.  Ex-Husband did not respond, and the Family Court granted the motion on December 15, 2023.

(4)     The docket reflects no further activity until March 4, 2024, when counsel entered an appearance on behalf of Ex-Wife in the ancillary proceeding. The parties had both been self-represented until then.  On March 22, 2024, the court sent notice to the parties that jurisdiction over ancillary matters was retained.  The notice informed the parties that they were required to file a Rule 16(c) ancillary

---

[2] The Court has taken judicial notice of the entire docket in Family Court File No. CK23-02408.

financial disclosure report.[3]  On April 22, 2024, the court sent the parties notice that a telephonic case management conference was scheduled for June 27, 2024.  The scheduling notice reiterated the rules as to the financial disclosure reports.

(5)     Ex-Husband did not answer his telephone for the June 27, 2024 conference and therefore did not participate.  Following the conference, the court issued an order scheduling a pretrial teleconference for September 12, 2024, and the ancillary hearing for September 24, 2024.  The order provided that the parties were required to submit an ancillary pretrial stipulation at least seven days before the pretrial conference.  The order further provided that Ex-Wife would initially complete the stipulation and forward it to Ex-Husband at least twenty days before the pretrial conference, after which Ex-Husband would complete the document and deliver it to the court and Ex-Wife's counsel at least seven days before the pretrial conference.

(6)     Neither party filed the pretrial stipulation before the pretrial conference. During the conference on September 12, 2024, Ex-Husband committed to filing the completed pretrial stipulation by September 16, 2024.  He did not do so.  On September 17, 2024, Ex-Wife's counsel submitted the pretrial stipulation with only

---

[3] Under Family Court Rule of Civil Procedure 16(c), the financial disclosure report is due within thirty days of the entry of the divorce decree.  The rule does not establish deadlines for circumstances, as here, in which the court takes ancillary jurisdiction after the entry of the decree. The March 22 notice described the deadlines under Rule 16(c) and did not establish any deadlines for the parties' financial disclosures in light of the fact that the divorce decree had already issued.

3

Ex-Wife's portion completed. The document stated Ex-Wife's position that there were no marital debts in dispute and identified the marital home as the only asset in dispute. It estimated the value of the home as $550,000 and indicated that the home was not subject to a mortgage. Ex-Wife requested that the court order that the home be sold and the proceeds divided 70%-30% in her favor. The stipulation indicated that Ex-Wife was seeking alimony but did not specify an amount. It provided information as to Ex-Wife's monthly expenses and stated that she was between jobs but acknowledged that she should be attributed with income consistent with her earnings from her previous position working as a full-time hotel clerk.[4]

(7) On September 17, 2024, Ex-Husband moved for a continuance of the ancillary hearing on the grounds that he had an attorney who would take his case. The court granted the continuance and rescheduled the hearing to February 17, 2025. No counsel entered an appearance for Ex-Husband in the ensuing months, nor did Ex-Husband submit his portion of the financial disclosure or pretrial stipulation, despite the continuance of the hearing.

(8) On January 27, 2025, Ex-Husband moved for a continuance of the February 17 hearing, indicating that he needed to care for his sick mother in Connecticut for a few months. The court denied the motion on February 11 but

---

[4] Ex-Wife was between jobs because she had left the marital home and moved out of state, where she initially lived in a women's shelter.

ordered that Ex-Husband could appear by Zoom. On February 13, 2025, court staff sent Ex-Husband a Zoom link for the hearing. They also attempted to telephone Ex-Husband that same day to advise him that the Zoom link had been sent, but he did not answer the call.

(9) Ex-Husband did not appear for the hearing. The court attempted to contact him by telephone, but he did not answer. The hearing therefore proceeded in default of his appearance. Ex-Wife requested that the court order the home sold and the entire proceeds awarded to her or, alternatively, divided 80%-20% in her favor, in lieu of alimony. As to her income and expenses, she testified that she had resumed working a full-time job earning $19 per hour. Her monthly expenses were estimated to be $6,000 per month, as indicated on the pretrial stipulation that she submitted, which included expenses for the parties' minor child, who was in Ex-Wife's care and for whom Ex-Husband was not paying any child support. Estimating her take-home pay to be 70% of her gross income, the court calculated her budget deficit to be $3,783 per month.

(10) Ex-Wife testified that Ex-Husband worked at the Pepsi factory and as a landscaper, but she was not aware of his income because he had concealed that information from her throughout their marriage. Taking "a shot in the dark, because we have to because [Ex-Husband] hasn't cooperated at all,"[5] the court estimated Ex-

---

[5] Appendix to Opening Brief at A-113.

Husband's post-tax monthly income to be $5,833 and his expenses to be $4,000.[6] The court therefore determined that Ex-Husband could afford to pay $1,833 per month in alimony. Based on an alimony period of 39 months,[7] the court determined that Ex-Wife was entitled to a total of $71,487 in alimony.

(11)  The court then evaluated Ex-Wife's request for 80% of the house proceeds in the context of that potential alimony award. The court observed that if the parties realized $500,000 from the sale of the house and Ex-Wife received 80% of the proceeds, or $400,000, she would receive $150,000 more than she would from a 50%-50% split.[8] The court observed that "she probably should realize closer to $75,000" based on the alimony calculation described above.[9] After hearing argument from Ex-Wife's counsel about why the court should award Ex-Wife a higher amount, the court decided to order a 75%-25% split in favor of Ex-Wife.

(12)  On May 6, 2025, the court issued a decision ordering that the house would be listed for the market price and sold, the costs of any required repairs deducted from the proceeds, and then the net proceeds divided 75%-25% in favor of Ex-Wife. The court ordered that Ex-Wife receive "at least $71,487 from the sale

---

[6] The court derived the $5,833 net monthly income figure from assuming a $100,000 gross annual income, minus 30% for taxes. The court proposed the $100,000 figure. Ex-Wife's counsel stated that it was unlikely that Ex-Husband "made more" than that, but neither Ex-Wife nor counsel indicated whether $100,000 was a reasonable estimate of Ex-Husband's income. *Id.* at A-113-14.
[7] *See* 13 *Del. C.* § 1512(d) ("A person shall be eligible for alimony for a period not to exceed 50% of the term of the marriage . . . .").
[8] Appendix to Opening Brief at A-116.
[9] *Id.*

6

proceeds in lieu of alimony."  Two weeks later, counsel entered an appearance on behalf of Ex-Husband and filed a motion seeking to reopen or set aside the judgment under Rule 60(b) of the Family Court Rules of Civil Procedure.  In the motion, Ex-Husband asserted that he never received the Zoom link for the hearing.  He stated that he "left work to appear at Court on February 17, 2025, after being contacted by his daughter, but the matter had concluded by the time he arrived."[10]  The motion asserted that Ex-Wife misrepresented or failed to disclose to the court facts relating to the parties' financial means, assets, and debts.  It requested that the court reopen and set aside the ancillary order "based on Rule 60(b) due to him not receiving the Zoom link and subsections (3) and (6)."[11]

(13)   The court denied the motion.  The court determined that Ex-Husband's conduct leading to his nonappearance for the hearing was not that of a reasonably prudent person and he therefore had not shown that the judgment was the result of excusable neglect.

(14)   On appeal to this Court, Ex-Husband argues that the Family Court erred by considering only whether Ex-Husband entitled to relief under Rule 60(b)(1) and not also considering Rule 60(b)(3) and (6).  He emphasizes that neither party

---

[10] *Id.* at A-53.

[11] *Id.* at A-54.  This was the only reference to any specific provision of Rule 60(b).  The motion did not set forth the legal standards applicable to a motion under Rule 60(b) or any subsection thereof, nor did it attempt to apply those standards to the factual assertions in the motion.

7

engaged in discovery and that both parties had been noncompliant with their pretrial financial-disclosure obligations. He argues that the judgment should be reopened under Rule 60(b)(3) because Ex-Wife mispresented the parties' assets and debts. He asserts that the court's speculation about Ex-Husband's income and expenses was not supported by any evidence. He contends that "given the potentially drastic difference in the outcome, the burden of Family Court Civil Rule 60(b)(6) has been met." He also argues that Ex-Husband's actions constituted excusable neglect under Rule 60(b)(1) because both parties had failed to comply with their procedural obligations through most of the course of the litigation and, when Ex-Husband called to inquire about the status of his motion for a continuance, court staff told him that it had been denied but did not tell him that the court had ordered that he could participate by Zoom.

(15) A motion to reopen a default judgment under Rule 60(b) is addressed to the sound discretion of the Family Court.[12] Thus, this Court generally reviews a trial court's decision to grant or deny a motion under Rule 60(b) for abuse of discretion.[13] "A claim that the trial court employed an incorrect legal standard, however, raises a question of law that this Court reviews *de novo*."[14] "Rule 60(b) is

---

[12] *Harper v. Harper*, 826 A.2d 293, 297 (Del. 2003).
[13] *Simpson v. Simpson*, 2019 WL 3763526, at *4 (Del. Aug. 8, 2019).
[14] *Id.*

liberally construed in light of the underlying policy in favor of a trial on the merits, but the movant bears the burden of establishing a basis for relief."[15]

(16)   When considering a motion under Rule 60(b), courts consider whether (i) the movant has established a basis for relief under Rule 60(b); (ii) the outcome of the case would be different if relief were granted; and (iii) the nonmoving party will suffer substantial prejudice if the judgment is reopened.[16]  Ex-Husband asserts that he showed a basis for relief under subsections (1), (3), and (6) of Rule 60(b).  We address each provision in turn.

(17)   Under Rule 60(b)(1), the Family Court may relieve a party from a judgment for "mistake, inadvertence, surprise, or excusable neglect."[17]  The subsection is "designed to remedy mistakes of fact that operate to keep the litigant out of court."[18]  Therefore, to obtain relief from a default judgment based on excusable neglect, the movant must show "excusable neglect in the conduct that allowed the default judgment to be taken."[19]  The movant "must first establish excusable neglect before the [trial court] will consider whether a meritorious defense

---

[15] *Id.*

[16] *Id.* at *5.

[17] DEL. FAM. CT. R. 60(b)(1).

[18] *Ravine v. Ravine*, 2006 WL 453213, at *2 (Del. Feb. 22, 2006).

[19] *Christiana Mall, LLC v. Emory Hill & Co.*, 90 A.3d 1087, 1091 (Del. 2014); *see also DiSabatino v. DiSabatino*, 2007 WL 812766, at *2 (Del. Mar. 16, 2007) (reviewing Family Court's denial of motion to reopen default order and describing first prong as "whether the conduct by the moving party that resulted in the default judgment (or order of dismissal) was the product of excusable neglect").

9

or prejudice to the [nonmoving party] exists."[20] "To show excusable neglect, the conduct of the moving party must have been that of a reasonably prudent person under the circumstances."[21] "Carelessness and negligence do not necessarily rise to the level of 'excusable neglect.'"[22]

(18) The Family Court did not abuse its discretion by finding that Ex-Husband did not demonstrate that the default judgment resulted from excusable neglect. Ex-Husband did not participate in the June 2024 case management teleconference. The court sent him several notices of the requirement that he provide his financial disclosure, but he did not do so. During the September 12, 2024 pretrial conference, he committed to provide the completed pretrial stipulation by September 16, but he failed to do so. After the court then granted his motion for a continuance of the ancillary hearing that was scheduled for September 24, 2024, he still did not submit his financial disclosure in the ensuing five-month period before the rescheduled ancillary hearing in February 2025. By faulting court staff for not mentioning—when he called to inquire about the status of his motion for a continuance of the February 2025 hearing—that the court had ordered that he could participate by Zoom, Ex-Husband tacitly admits that he knew that the hearing was

---

[20] *Christiana Mall*, 90 A.3d at 1091.
[21] *Ravine*, 2006 WL 453213, at *2.
[22] *DiSabatino*, 2007 WL 812766, at *3.

going forward but chose not to appear anyway. Ex-Husband has not shown that his failure to attend the ancillary hearing was the result of excusable neglect.

(19) Under Rule 60(b)(3), the Family Court may relieve a party from a judgment for "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party."[23] Rule 60(b)(3) applies "only in rare circumstances," and its "application [is] cabined to instances of fraud that impair a party's ability to present its case in litigation."[24] "The rule remains difficult to satisfy and establishes an exacting standard: (1) the burden of proving fraud is on the moving party; (2) the fraud must be established by clear and convincing evidence; and (3) the fraud must have prevented the moving party from fairly and adequately pleading its case."[25]

(20) Ex-Husband has not met that burden. He takes issue with the facts that Ex-Wife presented to the Family Court in the pretrial stipulation and at the ancillary hearing. But he had numerous opportunities to present his version of the facts: by submitting the Rule 16(c) financial disclosure, by participating in the pretrial stipulation process, and by appearing at the hearing. He did none of those things, and he has not shown that Ex-Wife's alleged misconduct prevented him from doing any of them. He therefore has not met his burden of demonstrating that Ex-Wife

---

[23] DEL. FAM. CT. R. 60(b)(3).
[24] *Erste Asset Mgmt. GmbH v. Hees*, 341 A.3d 1008, 1020 (Del. 2025).
[25] *Id.* at 1022.

11

engaged in fraud that prevented Ex-Husband from fairly and adequately presenting his case.

(21) Finally, Rule 60(b)(6) permits the Family Court to relieve a party from a judgment for "any other reason justifying relief from the operation of the judgment."[26] "Relief under Rule 60(b)(6) requires a showing of 'extraordinary circumstances.'"[27] This Court has long held that the phrase "'any other reason justifying relief' [in Rule] 60(b)(6) . . . 'vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.'"[28] We are reluctant to find extraordinary circumstances here, where Ex-Husband failed to provide his financial information before trial and then did not appear for the hearing at which he could have challenged Ex-Wife's version of the facts, but now seeks relief from the resulting judgment based on purported misrepresentations of the facts. But Ex-Husband also argues that he did not have notice that the court might award Ex-Wife 75% of the value of the house, because Ex-Wife asked for a 70%-30% split in her pretrial stipulation.

(22) In our view, reopening the judgment to the extent that it awarded Ex-Wife a greater share of the marital home than Ex-Husband had notice might be

---

[26] DEL. FAM. CT. R. 60(b)(6).

[27] *Dorsey v. Milner*, 2026 WL 146552, at *4 (Del. Jan. 20, 2026) (citing *Jewell v. Div. Social Servs.*, 401 A.2d 88, 90 (Del. 1979)).

[28] *Jewell*, 401 A.2d at 90 (quoting *Klapprott v. United States*, 335 U.S. 601, 615 (1949) (second alteration in original)).

awarded in default of his appearance is "appropriate to accomplish justice."[29]  Ex-Wife's pretrial stipulation did seek 70% of the home proceeds and an unspecified amount of alimony, which arguably gave Ex-Husband some notice that Ex-Wife might receive an amount more than 70% of the home proceeds.  But to reach the 75% award, the court selected an alimony amount by speculating as to Ex-Husband's income and expenses, having received no evidence as to those categories from Ex-Wife and her counsel.[30]  Moreover, the structure of the award did not limit Ex-Wife's award exceeding 50% of the property division to the calculated amount of alimony.  For example, if the net proceeds from the sale of the house were $500,000,[31] Ex-Wife would receive $250,000 in a 50%-50% split.  But in a 75%-25% split, she would receive $375,000, approximately $53,000 more than if she received 50% of the proceeds and $71,487 in alimony (the Family Court's speculative alimony calculation).[32]

(23)  Having determined that Ex-Husband has shown a "reason justifying relief" under Rule 60(b)(6), we briefly address the other prongs of the Rule 60(b)

---

[29] *Id.*

[30] It does not appear that Ex-Wife attempted to use any discovery tools to obtain information about Ex-Husband's income and expenses.

[31] Notably, Ex-Wife and her counsel did not present any evidence of the value of the home; counsel indicated that he believed the value recently to have declined from $550,000 to $500,000. Appendix to Opening Brief at A-114.

[32] A different award structure would reduce this effect:  assuming that the alimony calculation were valid, the court could have ordered that Ex-Wife would receive the first $71,487 of the proceeds and then 50% of the balance.

analysis, which require the movant to show that (i) the outcome of the action might be different if relief were granted and (ii) granting the motion would not cause substantial prejudice to the non-defaulting party.[33] We conclude that these prongs are satisfied here. Reopening the judgment solely to the extent of capping Ex-Wife's portion of the sale proceeds at 70% consistent with the notice to Ex-Husband of the risk of not appearing at the hearing would change the result of the proceeding. And we discern no prejudice to Ex-Wife in that result. Her answering brief states that Ex-Husband is renting the home to tenants, so it appears that it has not yet been sold and the proceeds divided.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court be REVERSED to the extent explained in this order and REMANDED for further proceedings consistent with this order. Jurisdiction is not retained.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[33] *See Simpson*, 2019 WL 3763526, at *5 ("In reviewing the Wife's Rule 60(b) motion, Family Court correctly examined whether: (i) the Wife established a basis for relief under Rule 60(b); (ii) the outcome of the case would be different if the requested relief was granted; and (iii) whether the nonmoving party will suffer substantial prejudice if the judgment is reopened.").